*Ex parte* BRADY.

Opinion delivered April 19, 1902.

1. CONDITIONAL PARDON—EFFECT OF BREACH OF CONDITION.—Where a pardon was granted on condition that the grantee would not repeat the offense, and he afterwards committed the same offense, and was convicted therefor, the condition of the pardon being broken, the former judgment of conviction was restored to its full force and effect. (Page 378.)

2. CUMULATIVE FINES—IMPRISONMENT.—Where defendant was convicted in twenty cases of unlawfully selling liquor at the same term of court, and fined in sums aggregating a large amount, and, failing to pay any part thereof, was imprisoned for the length of the time required to discharge him from further imprisonment under the judgment for the largest fine, he is not entitled to a discharge from all the fines, although the judgments in the several cases failed to direct that the imprisonment in one case should commence after the termination of it in the other. (Page 379.)

3. FINE—JUDGMENT—EXTENT OF IMPRISONMENT.—One imprisoned for failure to pay a fine is not entitled to discharge because the judgment imposing the fine failed to specify the extent of imprisonment which should be imposed upon the defendant in the event of his failure to pay the fine. (Page 380.)

4. CONSTITUTIONAL LAW—CRUEL AND UNUSUAL PUNISHMENT.—The fact that a defendant was fined sums aggregating $3,200, with costs aggregating $800, in twenty prosecutions for unlawfully selling liquors, and that, if compelled to serve out his fines under contractors and in jail, it will be about 12 years before he can be released, does not establish that the punishment is cruel and unusual, within the prohibition of Constitution 1874, art. 2, § 9. (Page 382.)

Certiorari to Craighead Circuit Court.

FELIX G. TAYLOR, Judge.

Petition dismissed.

### STATEMENT BY THE COURT.

At the September term of the Craighead circuit court for 1899, there were pending against R. C. Brady twenty separate cases on indictment for selling liquor without license. He was tried and convicted on seven of these indictments, and fines were imposed amounting to $1,900. He thereupon entered a plea of guilty to each of the remaining thirteen indictments, and those cases were continued until the next term, when judgments were also entered upon them, amounting in the aggregate to $1,300. Afterwards Brady was twice pardoned for these offenses, but each time he violated the condition upon which the pardon was granted. Brady was thereupon rearrested, and has since been in the county jail or at work under county contractors.

In April, 1901, on his petition for a writ of habeas corpus and for a discharge from further imprisonment, Brady was brought before the judge of the second circuit, but, after hearing the evidence, the circuit judge denied the prayer of the petition, and remanded him to the custody of the sheriff again. Brady procured a writ of certiorari from this court, to the end that the finding of the circuit judge may be reviewed, and the case has been brought here in that way. The other facts appear in the opinion.

*N. F. Lamb,* for petitioner.

When a defendant is convicted of several offenses, and no provision is made that the judgments shall be cumulative, their execution will be concurrent. 74 Ill. 20; 29 Fed. 775; 1 Bish. Cr. Proc. § 1310, Pr. 3. In the absence of a statute, the courts have no power to impose cumulative penalties. 44 Tex. 480; 11 Ind. 389; 2 Met. (Ky.), 271; 44 Mo. 279. The parts of the judgments providing for imprisonment are void. Sand. & H. Dig., § 2389; 53 Ark. 247; 67 Ark. 580; 36 Ark. 74. Criminal judgments should be certain and explicit. Whart. Cr. Pl. & Pr. § 923; 52 Mich. 697; 61 Mich. 105. Governor's revocation of pardon a nullity. 29 N. W. 80.

*George W. Murphy, Attorney General, contra.*

The governor may grant conditional pardons. 10 Ark. 284; 18 How. (U. S.), 307; 135 Mass. 48; 48 Ia. 264. Judgments against petitioner are not void, and could be corrected by appeal.

not by habeas corpus. 69 Ark. 93; 51 Ark. 215; 49 Ark. 143; 74 Ill. 20; Bish. Cr. Proc. (New Ed.), 1410.

*Campbell & Stevenson,* for petitioner.

The judgments, measured by the common law, do not authorize successive execution of the sentences. 2 Met. (Ky.), 271. To authorize such execution, there must have been an express direction in the judgment to that effect. 1 Bish. Cr. Proc. § 1327; 2 *id.* 813; 74 Ill. 20; 1 Leach, 597, 606. A sentence of imprisonment should be certain as to the time when it shall commence and end. 26 Minn. 498, 499; 19 Enc. Pl. & Pr. 484; 3 McArthur (D. C.), 26; 93 Me. 39. In the absence of any statute, if it is not stated in either of the sentences imposed that one shall take effect after the expiration of the other, the periods of time will run concurrently. 1 Bish. Cr. Proc. 1310; 3 McArthur (D. C.), 44; 51 Pac. Rep. 484. The judgments, under the statute, did not authorize the successive execution of the sentences. Sand. & H. Dig., § 2288; 21 Tex. App. 361; 13 S. W. 145; 76 Ill. 211; 76 Ill. 499; 73 Ill. 488; 80 Ill. 32; 81 Ill. 116. That portion of the judgments which provides for imprisonment is void. 44 Ia. 580. Habeas corpus proceeding is the proper remedy. 69 Ia. 395.

Riddick, J., (after stating the facts.) This is a proceeding to review the findings and orders of the judge of the circuit court denying the petition of R. C. Brady asking to be released from further custody and remanding him to the custody of the sheriff of Craighead county.

Brady was convicted on several different indictments for selling liquor without license. He was pardoned, and the fines against him remitted, on condition that he leave the state and not return. He returned to the state, and was again pardoned on condition that he would not again sell liquor without license, but in a short time violated the condition of his second pardon. The governor of the state thereupon issued his proclamation, declaring that the pardon was null and void by reason of the violation of the condition upon which it was granted, and that the judgments against Brady were in full force and effect.

Counsel for Brady say that the governor "had no more authority to revoke a pardon than a scavenger," and that his proclamation was without effect. It may be true that the governor had no power to revoke his pardon, but, the pardon having been granted

on condition that Brady would not again sell liquor without license, and he having violated that condition, and having pleaded guilty to a charge of selling liquor without license, and the judgment of a court of competent jurisdiction having been rendered against him convicting him of that crime, and it being thus, in effect, judicially established that Brady had, subsequent to the pardon, violated the condition upon which it was granted, the pardon by its own terms became of no effect, and did not protect Brady from the enforcement of the judgments against him. The proclamation of the governor did not revoke the pardon. It had been annulled by the act of Brady, judicially established, and the proclamation only gave notice of that fact. It might have been more regular to have first brought Brady before the circuit court to show cause why the judgments should not be enforced against him before proceeding to enforce them, but the failure to do so was an irregularity which furnishes no ground for his discharge, as it clearly appeared, on the trial by the circuit judge before whom Brady was brought by writ of habeas corpus, that the pardon had been annulled by his own act, that the judgments against him were in full force and effect, and that he had no cause to show against their enforcement. Sand. & H. Dig., § 3679.

The next contention is that these judgments are concurrent, and that, the defendant having been in custody the length of time required to discharge him from further imprisonment upon the judgment for the largest fine, he should be discharged from custody on all of them. It is true that, where one is convicted of two or more offenses the punishment for which is imprisonment, the judgment should direct that the imprisonment in one case commence after the termination of it in the other, and if this is not done the terms of imprisonment may run concurrently, so that the prisoner will be entitled to his discharge on the expiration of the longest term adjudged against him. Sand. & H. Dig., § 2288. But the rule does not apply here, for the judgment against Brady was not imprisonment, but a fine of a certain amount of money, and he was placed in the custody of the sheriff, not as a punishment, but as a means of compelling him to pay the fine. Counsel for appellant have filed very interesting briefs on this point, but, though they have cited a large number of cases, they have cited no case in which the rule for which they contend has been applied to a case where the judgments pronounced against the defendant

were for fines only. Under the statutes of this state, we see no room for the argument that two or more judgments for fines can run concurrently, so that the discharge of one satisfies all. Our statute requires that defendants against whom fines are assessed as a punishment for crime shall, in default of the payment of such fines, be hired out and compelled to work for the payment of their fines under a contractor or upon the roads or other public improvements of the county at 75 cents a day until the fines and costs are discharged. The statute provides that, if the prisoner is delivered to a contractor for the discharge of his fine, the contractor shall keep and work such prisoner for such time as will "discharge all fines and costs for which he may be committed," at the rate of 75 cents a day. Sand & H. Dig., § 921; Acts 1899, p. 181.

It will be seen from these and other statutes that the imprisonment which follows the failure to pay the fine assessed by the court is not now a form of punishment substituted for the fine, but is a means adopted to compel the payment of the fine. If a prisoner is fined $1,000, it is immaterial whether that is one fine for one offense, or is the aggregate of several fines for distinct offenses, for in either case, if he fails to pay the fine, and is committed to jail in default thereof, the statute directs that he shall be held, and compelled to discharge the fine or fines by working for a contractor or upon the public works of the county until all fines and costs adjudged against him are discharged. When he has worked or been imprisoned the number of days which at 75 cents a day equals the aggregate sum of the fines and costs imposed, he is entitled to his discharge from imprisonment, but not before.

But it is said that the statute provides that, if the punishment of an offense be a fine, the judgment shall specify the extent of the imprisonment which shall be imposed upon the defendant in the event he fails to pay the fine. Sand. & H. Dig., § 2289. As the judgment against Brady simply remanded him to the custody of the sheriff until the fine and costs were paid, without specifying the extent of his imprisonment, defendant contends that they do not conform to the statutes, and that he should therefore be discharged. But the section of the statute referred to was taken from a statute of 1875, enacted before the passage of the acts relating to the hiring of county convicts. If a judgment for a fine was not paid under the law as it stood then, the prisoner could

not be hired out, but was kept in jail for a certain time, which the statute provided should not exceed one day for each dollar of the fine.   Act March 24, 1875.   The law fixed the maximum time during which the person upon whom a fine was imposed could be confined in jail upon a failure to pay the fine, though it was discretionary with the trial court to name a shorter time, and for that reason the law required that in such cases the extent of the time should be named in the judgment.   But afterwards statutes were passed relating to the hiring of county convicts who failed or refused to pay fines imposed upon them, which made it impossible to set out in the judgment the extent of the punishment that would result from a failure to pay the fine.   For instance, the act of 1881 required that the prisoner should labor two days for each day lost on account of sickness, and the act of 1883 gave the prisoner no credit for time lost through sickness or otherwise, "when not due to the weather or fault of the contractor."   Acts 1881, p. 150; Acts 1883, p. 126.

Under these acts it was manifestly impossible for the extent of the imprisonment to be specified in the judgment, for the duration of it depended upon uncertain and future contingencies, over which the court had no control, and they in effect repealed the law requiring the time to be named in the judgment.

Though frequently amended, the law seems to have remained substantially in this condition on this point until the act of 1899, above referred to.   This act contained the following provision, to-wit: "The convict defendant shall receive 75 cents per day, including Sunday, for each day he is hired out to such contractor, in excess of any liability for care or sickness."   Acts 1899, p. 181.

Now, we are not very certain what was meant by this provision.   We are not sure whether the prisoner was to be allowed 75 cents for each day he was hired out, regardless of whether he was sick or not.   Nor is it plain whether the act intended to allow the prisoner 75 cents a day during his imprisonment, or only during time he was hired out.   But we shall resolve these doubts in favor of the defendant.   As the act gives the county judge the right, when he is unable to make a satisfactory contract for the hire of the prisoners, to work them on the public roads, bridges, levees or other county improvements; as the county judge has the full power either to hire out or work the prisoners, we think, if they are allowed to remain idle in jail, they should still receive

75 cents for each day they remain in jail, or, rather, that under this act they should not be imprisoned longer than one day for each 75 cents of the fine and costs, though, unless the prisoner works, the fine will not be paid, and the judgment therefor may still be enforced against his property, if he has any. In the interest of certainty, it would no doubt be well for judgments of conviction to specify that the imprisonment of the defendant should not exceed one day for each 75 cents of the fine and costs, but the failure to do so does not render the judgment void, for the statute names the limit, and makes the extent of the imprisonment certain. Even if the failure to specify this limit in the judgment was an error, which we doubt, it would furnish no ground for the discharge of the prisoner. 1 Bish. New Cr. Proc. § 1410.

We wish in passing to call attention to the uncertain and confused state of the law relating to the imprisonment and hiring of county convicts. Numerous statutes have been passed affecting this subject within the last twenty-five years which, while not expressly repealing former laws, are more or less inconsistent therewith. To ascertain the law in reference to this question, one must now look through numerous statutes, which are confusing, and suggest forcibly the need of a statute covering the whole question and repealing former statutes, thus relieving the subject from the doubt and uncertainty which now surrounds it.

Again, it is said that the aggregate amount of the fines against the defendant is $3,200, and that with the costs the total sum adjudged against him is about $4,000; that he is without means to pay this sum, and if he is compelled to serve it out under contractors and in jail, it will be about twelve years before he can be released. For this reason, defendant contends that the punishment inflicted is cruel and unusual and forbidden by our constitution. But constitutional provisions against cruel and unusual punishment are directed, not so much against the amount or duration, as against the character of the punishment. The imposition of a fine and imprisonment upon failure to pay the fine is certainly not an unusual punishment, and, though our constitution forbids the imposition of excessive fines, as well as the infliction of cruel and unusual punishments, yet, to justify the courts in interfering and setting aside a judgment for a fine authorized by a statute, the fine imposed must be so excessive and unusual and so disproportionate to the offense committed as to shock public senti-

ment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. 8 Am. & Eng. Enc. Law (2d Ed.), 440; *State* v. *Hodgson,* 66 Vt. 134; *Ex parte Swann,* 96 Mo. 44.

Now, the statutes under which the fines were imposed in this case permitted a fine as high as $500, and made each day's selling a separate offense. The defendant was fined in twenty different cases; the highest fine imposed for one offense was $400, and the lowest fine was $100. The fines in the twenty cases average $150 a case, and amounted in all to $3,200. * In determining whether these fines were excessive within the meaning of our constitutional prohibition against excessive fines, we must consider the offense for which they were imposed and the nature of the illegal business in which the defendant was engaged. It is a matter of common knowledge that the retailing of liquors in large towns is a profitable business. In many of the large towns and county seats of the state local option or prohibition laws are in force which forbid the granting of license to sell liquors in such towns. Now, unless a considerable fine can be assessed against those who violate such laws and sell without license, it is evident that those laws will not stop the illegal sale of liquor, for those who violate the law can afford to pay the fines out of the profits of the business . The only effect of the law will be to compel the payment of fines in the place of a license, and to force the business into the hands of a more lawless and irresponsible set of men. It would be equally futile to impose a large fine unless there were adequate means of enforcing its payment, for men who engage in such illegal traffic are generally either destitute of much property, or they have it concealed so that an ordinary execution, without the right to take the body of the defendant, would generally be of no avail. The amount of the fines imposed in this case, and the imprisonment which must follow unless the fines are paid, are no doubt unusual in a certain sense, but the reason therefor is not found in the undue severity and cruelty of the statute under which the punishment was imposed, but in the number of offenses committed by the defendant.

If this were a case where the defendant had through mistake

---

\* It seems that the lowest fine permitted by the act is $200, and the highest $500, and the fines imposed were lower than the act authorized, though the defendant cannot complain as to that. Sand. & H. Dig., § 4862.

violated the law, or if the circumstances were such as to show that the fines imposed were grossly excessive and disproportionate to the offense, there might be ground for interference, but nothing of the kind is shown. On the contrary, the circumstances, as they are presented in the record, show that there was no disposition on the part of the officers of the law to treat defendant with undue severity. Although defendant was first tried and convicted in seven different cases for selling liquor without license, the highest fine imposed by the law was not assessed in either of the cases. And when, afterwards, he entered pleas of guilty in thirteen other cases for the same offense, the judgments in these cases were suspended until the next term,—no doubt as a favor to the defendant. Soon after these fines were imposed, he was pardoned on condition that he leave the state and not return. He disregarded the condition, and was again relieved by a pardon on condition that he refrain from selling liquor without license. The purpose of these conditions imposed in the pardon was to prevent a repetition of the offense by the defendant in this state, but he paid no attention to either of the conditions, and within less than a year was again arrested for selling liquor in the same county and town, and pleaded guilty, and was fined for having twice violated the law against selling liquor without license.

So far from any undue severity being shown the defendant, it seems that the leniency exercised towards him by suspension of judgments and frequent pardons had produced in his mind a belief that these judgments would not be enforced against him, even though he continued to violate the conditions of his pardon. The severity of the punishment imposed in the cases against defendant is referable neither to the harshness of the law nor the manner of its enforcement, but altogether to the persistency with which he has violated the law, and we find no ground for interference with the judgments rendered against him. His petition is therefore dismissed.