JOHNSON v. STATE.

4552                                                  218 S. W. 2d 687

Opinion delivered March 21, 1949.

*John C. Sheffield,* for appellant.

*Ike Murry,* Attorney General and *Arnold Adams,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. Appellant was tried for murder in the first degree for the homicide of Claude Tate. From a conviction of manslaughter, there is this appeal. The motion for new trial contains seven assignments, which we will discuss in suitable topic headings.

I. *Sufficiency of the Evidence.* Assignments 1, 2, 3 and 4 in the motion for new trial present this issue. The affray, which resulted in the homicide of Tate, occurred in a beer tavern. Tate and a companion were seated at a table with two women; and a man named Arch Clutch was standing nearby. All were drinking beer. Walter Johnson and a companion went to the tavern for beer. As soon as Johnson entered the room, Arch Clutch cursed Johnson, and started toward him

with a beer bottle as a weapon. Johnson opened his knife in preparation for the attack. Those in the tavern undertook to keep Johnson and Clutch separated; and general confusion resulted. In an effort to extricate himself, Johnson struck with his knife, and mortally wounded, Tate, who died two hours later.

Johnson's defense was that his hearing was impaired, that he didn't know what was said by the other people in the room, and that he thought they were "taking sides" with Arch Clutch, and were "ganging" him. We quote from Johnson's testimony: "Q. Why did you strike at anybody? A. I was scared. Q. What were they doing to you? A. Well, I don't know, there was one on my back, I know that. Q. One on your back, was somebody standing in front of you, too? A. It looked like two or three of them around me and one on my back had me pushed over.

. . . . .

"Q. What was there to keep you from seeing Tate? A. I guess he was behind me, I don't know, he was a strange man. Q. You mean Mr. Tate was ahold of you or on your back? A. That is what I think, there was somebody on my back. Q. You reached out and stabbed anybody that was in front of you? A. I struck with my knife. Q. You didn't care who it was? A. I wanted to get them off of me. . . . Arch was the one I was scared of."

The court instructed the jury on Johnson's plea of self-defense; and the verdict reflects that the jury gave no credence to that plea. So, the question presented is, whether Johnson was guilty of manslaughter for the killing of Tate, when Johnson intended to inflict injuries on Arch Clutch, rather than on Tate. From the evidence, the jury could have concluded that Johnson intended to kill Arch Clutch, but, by misadventure, struck Tate. In such a situation, Johnson could be guilty of either murder or manslaughter, as the jury might determine. In *Brooks* v. *State,* 141 Ark. 57, 216 S. W. 705, we said: "Under our statute a person will be held guilty of murder or manslaughter according to the

circumstances of the killing, who, in the attempt to kill one person, by mistake kills a third person, although there was no intent or design to kill such a third person. *Ringer* v. *State,* 74 Ark. 262, 85 S. W. 410; 21 Cyc. 712, and cases cited; Wharton on Homicide (3 Ed.) par. 360, and Michie on Homicide, vol. 1, § 17.''

To the same effect, see 40 C. J. S. 906, where the holdings from many jurisdictions are summarized. Without detailing all of the testimony, we hold that the evidence was sufficient to support the conviction of voluntary manslaughter.

II. *Involuntary Manslaughter.* As is usual in a criminal case of this kind, the court instructed the jury on: murder in the first degree, murder in the second degree, voluntary manslaughter, reasonable doubt, self-defense, circumstantial evidence, burden of proof, and other relevant issues. In Assignment No. 5 of the motion for new trial, appellant insists that the court should have instructed the jury on the crime of involuntary manslaughter. *Ringer* v. *State,* 74 Ark. 262, 85 S. W. 410, holds that an instruction on involuntary manslaughter is proper in a case such as the one at bar. To the same effect is *Scott* v. *State,* 75 Ark. 142, 86 S. W. 1004. Undoubtedly, the trial court would have given an instruction on involuntary manslaughter if the appellant had made a request therefor.

Our search of the transcript, however, fails to show that the appellant requested any instruction on *involuntary manslaughter.* The situation in the case at bar is similar to that in *Cooley* v. *State,* 213 Ark. 503, 211 S. W. 2d 114, in which we pointed out that, if the appellant desired an instruction on involuntary manslaughter, he should have submitted one to the court ''setting forth a proper statement of the law in that particular, and, not having done this, he cannot complain of the court's failure to give such instruction.'' See, also, *McCuistion* v. *State,* 213 Ark. 879, 213 S. W. 2d 619, and the cases there cited.

III. *The Punishment.* The jury found the appellant guilty of voluntary manslaughter, and fixed his

punishment at seven years' imprisonment. This is the maximum under § 2993, Pope's Digest. By assignments Nos. 6 and 7 in the motion for new trial, appellant insists that such punishment violates the State and Federal Constitutions. We copy the assignments as contained in the motion for new trial:

"The Legislature has defined homicide and fixed penalties for each grade, listing in the order of importance, homicide as follows: Murder in the first degree, punishable by death by electrocution, as may be determined by the jury; murder in the second degree, punishable by imprisonment in the penitentiary at some period of time, the maximum being 21 years, the minimum being 5 years; manslaughter, punishable by imprisonment in the penitentiary for some period of time, the maximum being seven years and the minimum being two years; involuntary manslaughter, punishable by imprisonment in the penitentiary at some period of time, the maximum being three years, or by fine at from $100 to $1,000. The Legislature having so defined and divided the crime of homicide into these four classifications and providing the relative order of the seriousness of each, and the elements constituting each, contravened the Constitution of Arkansas in fixing by law the punishment for the crime of manslaughter at a maximum of seven years, which is beyond the minimum of five years for murder in the second degree, and the jury by undertaking to fix the sentence at seven years, the verdict is violative of Art. 2, § 9 of the Constitution of the State of Arkansas, and, both the law and the verdict are in violation of said Constitution.

"For the reasons given . . . above, Amendment 8[1] of the Constitution of the United States likewise is violated."

A. *The State Constitution.* First, we consider Art. 2, § 9 of the Arkansas Constitution, which, as applicable here, reads:

". . . nor shall cruel or unusual punishment be inflicted; . . ."

---

[1] The Assignment said "Article 8." Evidently, "Amendment 8" was intended as the United States Constitution has only seven Articles.

Some of our cases involving this quoted language are Ex parte Brady, 70 Ark. 376, 68 S. W. 34, and *Williams* v. *State,* 125 Ark. 287, 188 S. W. 826, L. R. A. 1917B, 586. This constitutional provision against ''cruel and unusual punishment'' is directed, not so much against the amount or duration of the punishment, as against the character of the punishment. It is the cruel or unusual *character* of the punishment rather than the *duration* of the confinement that is generally within the constitutional inhibition. The fact that the punishment authorized by the statute is severe does not make it cruel or unusual. For general authorities, enunciating the same holdings as those in our cases, see 16 C. J. 1354, 24 C. J. S. 1187, and Cooley on Constitutional Limitations (8th Ed.), Vol. 1, page 692, *et seq.*

Sections 2979 and 2993, Pope's Digest, fixing the maximum and minimum punishments for murder in the second degree and voluntary manslaughter, respectively, come to us from the Act of December 17, 1838. It is within the power of the Legislature to classify homicides and determine the duration of the punishment for the violation of each such classifications. We therefore hold that the verdict and judgment of seven years' imprisonment in this case is not in violation of the Arkansas Constitution.

B. *The Federal Constitution.* Appellant says that Amendment No. 8 of the United States Constitution protects him against such a lengthy imprisonment. Amendment 8 to the Federal Constitution has practically the same language concerning cruel and unusual punishment as does Art. 2, § 9 of the Arkansas Constitution previously quoted. The Supreme Court of the United States, in a long line of cases, has held that Amendment 8 to the Federal Constitution is a limitation upon the Federal Government and not upon the State Governments; so such amendment does not benefit the appellant in this case. In *Collins* v. *Johnston,* 237 U. S. 502, 35 S. Ct. 649, 59 L. Ed. 1071, the United States Supreme Court had before it a case where a defendant had been convicted of perjury in the State Courts of California, and had been

sentenced to the maximum sentence of fourteen years in the penitentiary. He claimed that the sentence was "cruel and unusual punishment" and invoked the 8th Amendment to the United States Constitution. Mr. Justice PITNEY, speaking for the Supreme Court of the United States, said:

"The 8th Amendment is also invoked, with its prohibition of cruel and unusual punishments; but, as has been often pointed out, this is a limitation upon the Federal government, not upon the States. *Barron* v. *Baltimore,* 7 Pet. 243, 247, 8 L. Ed. 672, 674; *Pervear* v. *Massachusetts,* 5 Wall. 475, 480, 18 L. Ed. 608, 609; *McElvaine* v. *Brush,* 142 U. S. 155, 158, 35 L. Ed. 971, 973, 12 Sup. Ct. Rep. 156; *O'Neil* v. *Vermont,* 144 U. S. 323, 332, 36 L. Ed. 450, 456, 12 Sup. Ct. Rep. 693; *Ensign* v. *Pennsylvania,* 227 U. S. 592, 597, 57 L. Ed. 658, 661, 33 Sup. Ct. Rep. 321."

If the appellant in the case at bar had contended that his rights under the 14th Amendment to the United States Constitution had been violated, such contention would be answered by the language of Mr. Justice PITNEY in the same case of *Collins* v. *Johnston,* to-wit:

"To establish appropriate penalties for the commission of crime, and to confer upon judicial tribunals a discretion respecting the punishment to be inflicted in particular cases, within limits fixed by the lawmaking power, are functions peculiarly belonging to the several States; and there is nothing to support the contention that the sentence imposed in this case violates the provisions of the 14th Amendment either in depriving appellant of his liberty without due process of law, or in denying to him the equal protection of the laws. Re *Kemmler,* 136 U. S. 436, 448, 34 L. Ed. 519, 524, 10 Sup. Ct. Rep. 930; *Coffey* v. *Harlan County,* 204 U. S. 659, 662, 51 L. Ed. 666, 668, 27 Sup. Ct. Rep. 305."

We hold against the appellant on all of the assignments that he has presented in his motion for a new trial. Affirmed.