Gerald HOLMES *v.* STATE of Arkansas

CR 74-153                                    520 S.W. 2d 715

## Opinion delivered March 24, 1975
[Rehearing denied April 21, 1975.]

*Max Bowie* and *Sam Boyce,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Early on March 29, 1972, it was discovered that the Baron Camper Company building owned by Black Rock Development Corporation and located just west of Black Rock had been burglarized. Appellant, Gerald Holmes, and Ernest Kisling, were arrested that same day and on March 31, 1972, entered pleas of guilty to burglary and grand larceny. As a result of that plea appellant received a sentence of 21 years' with 14 years thereof suspended. On May 15, 1974, Holmes' conviction was vacated and set aside by the United States District Court for the Eastern District of Arkansas with the requirement that appellant be put to trial not later than the first day of the next term of the Circuit Court of Lawrence County which was June 17, 1974. On

June 17, 1974, appellant was again tried and the jury found him guilty of burglary and grand larceny and fixed his punishment at 8 years for each count. The trial court after considering his pre-arrest record and the report filed by the county probation officer directed that the sentences should run consecutively. For reversal appellant raises the issues hereinafter discussed.

POINT I. The record shows that the burglary occurred on a wet rainy night. There were two sets of footprints leading from the door of the camper plant to a place where an automobile, which had different types of tread on the two front tires, had been parked. Darvin Stow, a deputy sheriff, determined that appellant and one Ernest Kisling had recently made applications and had given as their address, room 25, Skyway Courts, Pocahontas, Arkansas. Upon arriving at the Skyway Courts, Deputy Stow found an automobile with front tires matching the tracks he had previously found in the vicinity. He also saw clay mud, comparable to the area where the car had been parked, inside the car and footprints leading from the car up into room 25. After obtaining a search warrant, a search of room 25 produced the tools and equipment that had been taken in the burglary. In the search they also found a pair of wet brown shoes with mud around the soles and on the wedge of the heels and a pair of dingo boots that matched the footprints leading from the burglarized building to the parked automobile.

Of course, this evidence alone was sufficient to sustain appellant's conviction. In addition, however, it was shown that appellant had stated to the officers that he would go before the judge and plead guilty. He also stated that he did commit the crime and was caught redhanded.

POINT II. Appellant now contends that his statement, that he was caught redhanded and would plead guilty when he went before the judge, should have been suppressed. We find no merit in this contention. The record made at the "Denno hearing" shows that he signed a waiver of rights form after being given the *Miranda* warnings and from the totality of the evidence given at the "Denno hearing", we agree with the trial court that appellant's statement was voluntary.

POINT III. We find no merit in appellant's contention that officer Stow had no probable cause to go before the municipal judge to obtain a search warrant. The record shows that he explained to the municipal judge in affidavit form the information he found at the site of burglary and at room 25, Skyway Courts.

POINT IV. Appellant contends that the trial court erred in permitting the prosecution to call Ernest Kisling as an adverse witness and then impeach his credibility by showing prior convictions. We find no merit in this contention since appellant's defense was an alibi and since both he and Kisling had originally pled guilty, the prosecution could certainly call Kisling to show the absurdity of the alleged alibi defense.

POINT V. Appellant contends that the trial court erred in permitting witness Callahan, general manager of Baron Camper, to be recalled to the stand. The record shows that the prosecution attempted to show by witness Callahan that either Kisling or appellant had made some incriminating statements in front of Callahan on the day of the arrest. In view of Ark. Stat. Ann. § 28-710 (Repl. 1962), which permits the recall of a witness with leave of the court, and the fact that the trial court sustained objections to all the testimony offered, we can find no merit in appellant's contention.

POINT VI. Neither do we find any merit in appellant's contention that the trial court erred in permitting the officers to describe the similarity between the front tires on appellant's vehicle and the tracks made near the scene of the burglary. Furthermore, we see no error in the trial court's permitting the witness to testify that the metal filings and sawdust found in appellant's car appeared to be similar to that found on the tools and equipment and in the plant of the Baron Camper Company.

POINT VII. Less than 30 days before the trial appellant changed his plea of not guilty to a plea of not guilty by reason of insanity and moved that he be committed to the State Hospital for a period of 30 days. This would have run appellant's trial beyond the date set forth in the order of the Federal District Court, requiring his discharge if he was not

tried by a certain date. Furthermore, after the trial, the trial court did commit appellant to the State Hospital for 30 days before sentencing him and the State Hospital found that appellant was without psychosis. Consequently, we can find no error in the trial court in refusing to commit him beforehand, but should somehow it be considered as error, then the error obviously could not be prejudicial.

POINT VIII. Since appellant received a concurrent sentence of 21 years on both charges of burglary and grand larceny when he pled guilty with 14 years thereof suspended, he now contends that the consecutive 8 years sentences assessed by the trial court amount to excessive, cruel and unusual punishment and that such sentence is not permissible under *North Carolina* v. *Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). The allegation that the sentences are excessive, cruel and unusual has no merit. See *Hooper & Westlin* v. *State*, 257 Ark. 103, 514 S.W. 2d 394 (1974). Neither do we find anything in *North Carolina* v. *Pearce, supra*, or in *Chaffin* v. *Styachcombe*, 412 U.S. 17, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973), that would prevent the trial court from running the two sentences consecutively. The record shows that the trial court took into consideration a pre-sentencing report and the defendant's arrest record. It takes two pages of the record to list appellant's arrest record from September 23, 1960 through March 29, 1972. The probation report shows that following appellant's original plea of guilty and prior to the district court's order, appellant at one time escaped from prison. This alone would have been sufficient to revoke the 14 years suspended in the first trial. While at the prison he had a fight with an inmate, was disrespectful to the officers and was described by the classification officer at Cummins Prison Farm as a nuisance. After the return to the jail in Walnut Ridge, the officers had to separate him from a fight with Ernest Kisling, that he initiated, and in doing so, appellant bit one of the officers. He also invited the officer to fight with him and continually threatened them with the Federal Judge. Furthermore, the Federal District Judge in entering his order recognized that appellant might receive a longer sentence upon a retrial and in effect warned him of that risk. In light of this record the trial court obviously had other and valid reasons for imposing a consecutive sentence on appellant and

consequently we cannot say that the trial court did so from a spirit of vindictiveness or to discourage meritless post-conviction appeals.

Affirmed.