Otis HINTON *v.* STATE of Arkansas

CR 76-16                                    537 S.W. 2d 800

Opinion delivered June 28, 1976

44

*John D. Bridgeforth,* court-appointed, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Terry Kirkpatrick,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Otis Hinton was found guilty, by a jury, of the crimes of robbery by use of a firearm, kidnapping and assault with intent to rape. He seeks reversal alleging that the court erred in permitting Mrs. Georgia Ruff, the alleged victim, to identify him, that the evidence was insufficient to prove assault with intent to rape and that his sentence was excessive and constituted cruel and unusual punishment.

The robbery was committed on December 17, 1974, at approximately 7:00 p.m. The robbers took Mrs. Ruff away from her grocery store in Round Pond after one of them had struck her on the head with a pistol. She was forced into the back seat of an automobile which was driven from the scene by one of the robbers to a point on a rural road near Widener. During the trip one of the robbers got into the back seat with Mrs. Ruff. She testified that it was appellant. She said appellant tried to put his hands "up her dress" and when she fought him, he told her to move her hands or he would beat her brains out. She added that when she continued to fight appellant, he hit her three times with a pistol and then returned to the front seat of the car, which was shortly thereafter stopped along the road. Then, according to her, she was directed by appellant to get out of the car and, when she did, both of the robbers started trying to remove her underclothes. She stated that shortly thereafter the two fled when one of them detected the approach of another automobile.

The police investigating the crime, in checking the area where the robbers had stopped their automobile, found a pistol which they traced into appellant's possession a short time before the robbery. Appellant was taken into custody on December 19 and placed in the St. Francis County jail. He was advised of his constitutional rights. He refused to sign a waiver of his rights and advised the officers that he had an attorney. A "lineup" was conducted on Friday, December 20 at which appellant was identified by Mrs. Ruff as one of the robbers. At the trial she testified that appellant was the one who held a gun on her at the store, struck her in the face with the pistol in her living quarters, got in the back seat of the car with her and tried to put his hand under her dress, and with his companion tried to remove her clothing after they stopped the car. Appellant was charged with the crimes of which he was found guilty by information filed on January 29, 1975.

Appellant's motion to suppress the lineup identification was heard and denied on August 19, 1975, before the trial commenced. In his motion, appellant alleged that the identification should be suppressed because he was forced to participate in the lineup without the benefit of counsel, and that he was forced to confront the victim in a small hallway with several other prisoners, at which time he was called by name and asked to stand directly under a light in the room. He asserted that the procedure was impermissibly suggestive and gave rise to a substantial likelihood of irreparably mistaken identification.

One facet of appellant's argument on this point is the fact that the lineup was held without his attorney being present, and, as a matter of fact, without any effort being made to notify the attorney or even ascertain his identity. It is sufficient to say that appellant was not entitled to the assistance of counsel at the lineup conducted before the commencement of prosecutorial proceedings by the filing of an information against him. *Kirby* v. *Illinois,* 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972); *Pollard* v. *State,* 258 Ark. 512, 527 S.W. 2d 627; *King* v. *State,* 253 Ark. 614, 487 S.W. 2d 596.

We cannot say that there was error in the denial of appellant's motion to suppress or the circuit judge's finding that the pretrial identification proceedings were not so impermissibly suggestive as to give rise to any substantial

likelihood of irreparable misidentification. There were five persons in the lineup. The victim had viewed an earlier one in which appellant was not a participant and did not identify anyone. She said that she had not looked at a group of pictures shown her by Deputy Sheriff Irwin between the time she reported the incident and the lineup. Appellant contends the group included pictures of him and his brother that were newer and different in characteristics from the others, most of which were "penitentiary pictures." There was testimony that an officer, by calling appellant by name and directing him to stand under a light, directed attention to him so that Mrs. Ruff immediately connected him with the crime. The evidence on this point is in considerable conflict and we must defer to the judgment of the trial judge on credibility of the witnesses. Anthony King, a jail inmate who was a participant in the lineup said that, after viewing the lineup for four or five minutes, Mrs. Ruff had not identified anyone until the jailer (Buford Hopkins, called "Jackie") told Otis Hinton to move under the light, calling him by name. Charles Pruitt said "they" told Otis to move under the light, but said that the lineup participants were told to move under the lights "before the people came in." Appellant said that it was Irwin who directed him, by name, to stand under the light, and that Irwin made a gesture with his hand at the time, and all but put his hand on appellant's shoulder. He said that he was the first to be directed to move under the light. Appellant denied that he and the others were told to move under the light before Mrs. Ruff came in. Mrs. Ruff testified that nothing was said during the lineup. The jailer testified that he did not say anything to anyone during the course of the lineup.

On the other hand, Mrs. Ruff stated positively that her identification was based upon her observation of appellant on the evening of the crime. She said she was only three feet from him in the store when she first saw him and had opportunities to see his face as the robbers' automobile passed under lights while she was lying in the floor of the back seat. She said that he was the one who got into the back seat and was trying to put his hand up under her dress and that she was fighting with him.

The central question is whether, viewing the totality of the circumstances, the courtroom identification was reliable, even if we should find that the lineup was impermissibly

suggestive. *Neil* v. *Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). When we consider the opportunity the witness had to view her assailant during the progress of the crimes committed against her, her attention to her assailant, her certainty of identification at the lineup, at the suppression hearing and in the courtroom, after she had failed to identify anyone in a previous lineup, and the short period of time elapsing between the crime and the lineup, and when we resolve the questions of credibility as to suggestive procedures at the lineup as the trial judge did, we cannot say that the trial court's finding that there was no substantial likelihood of irreparable misidentification was erroneous.

We find sufficient evidence to raise a question for the jury as to appellant's intent to rape Mrs. Ruff. We recognize that this intent must be evidenced by some overt act which constitutes the beginning of, or a part of the perpetration of the offense and not merely a preparation therefor. But the intention to have sexual intercourse with the victim by force may be ascertained from acts or words connected with an assault and any overt act toward accomplishment of the purpose. It may be inferred from the circumstances surrounding the assault. See *Frederick* v. *State,* 258 Ark. 553, 528 S.W. 2d 362. Appellant argues that, because it was not shown that he ever attempted to remove his clothes, or that he put his person in condition or position to perform the act of sexual intercourse, there was not sufficient evidence of intent. We cannot accept that argument, when all the circumstances are considered. In addition to the testimony about appellant's conduct in the back seat of the car, Mrs. Ruff said that immediately upon stopping the car and ordering her out of it, the two robbers commenced trying to undress her, removed her underclothing, and when she vigorously resisted them, one of them said to the other "can you get to her" and, when he received the response "not yet," "throw her over the car," but both fled soon after they had thrown her over the car when one of the assailants thought he saw another automobile approaching. This evidence was sufficient to support the jury verdict. See *McGee* v. *State,* 215 Ark. 795, 223 S.W. 2d 603.

Appellant was sentenced to consecutive sentences of 21 years for robbery, 15 years for use of a firearm, 3 years for kidnapping and 21 years for assault with intent to commit

rape, all of which were maximum sentences. He admits that the trial judge has the discretion to make the sentences run consecutively, but argues that for the court to do so when all of the crimes were in one course of events and all were maximum sentences was such an abuse of discretion as to constitute cruel and unusual punishment. First we should say that the court's discretion includes the discretion to make maximum sentences run consecutively. Actually the sentences would run consecutively unless the trial court deemed a concurrent sentence or sentences best for society and the person convicted. Ark. Stat. Ann. § 43-2312 (Supp. 1975). We cannot say, on the record before us that the trial judge did not act for the best interest of both society and the appellant, whose interests must be balanced.

The constitutional prohibition is directed toward the kind of punishment imposed, not its duration. *Williams* v. *State*, 125 Ark. 287, 188 S.W. 826. The fact that punishment is severe does not make it cruel or unusual. *Thom* v. *State*, 248 Ark. 180, 450 S.W. 2d 550. We have held that the imposition of a maximum sentence for an offense is not cruel or unusual punishment. *Johnson* v. *State*, 214 Ark. 902, 218 S.W. 2d 687. See also *Carter* v. *State*, 255 Ark. 225, 500 S.W. 2d 368. We have rejected the argument that the cumulative effect of consecutive sentences makes punishment cruel and unusual. *Blake* v. *State*, 244 Ark. 37, 423 S.W. 2d 544. We have also held that making sentences consecutive is not cruel or unusual. *Holmes* v. *State*, 257 Ark. 871, 520 S.W. 2d 715; *Thom* v. *State*, supra.

The constitutional prohibitions against cruel and unusual punishment are primarily addressed to the legislative branch. *Blue* v. *State*, 224 Ind. 394, 67 N.E. 2d 377, cert. den. 330 U.S. 840, 67 S. Ct. 976, 91 L. Ed. 1286 (1946); *Brown* v. *State*, 157 Fla. 853, 13 S. 2d 458 (1943). Appellant does not contend that the maximum sentence for any of the offenses of which he was found guilty is cruel and unusual punishment. In order to be judicially held to be so, the statute must provide punishment so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstance. *Ex parte Brady*, 70 Ark. 376, 68 S.W. 34. In that case, it was said that punishment is not cruel and unusual where the reason

for the severity of the punishment is found in the number of offenses committed by the defendant and not in the undue severity and cruelty of the statute. Punishment authorized by statute is never held cruel or unusual or disproportionate to the nature of the offense unless it is a barbarous one unknown to the law or so wholly disproportionate to the nature of the offense as to shock the moral sense of the community. *Carter* v. *State,* supra; *Geurin* v. *City of Little Rock,* 203 Ark. 103, 155 S.W. 2d 719.

The cumulative effect of our decisions is that the exercise of the court's discretion to make maximum sentences on each one of multiple offenses consecutive does not in and of itself constitute cruel and unusual punishment. This was the effect of our decision in *Thom* v. *State,* supra, where a total sentence of 63 years was imposed, even though it may not have been apparent from reading the opinion without reference to the permissible punishment under the applicable statute for the offense there charged. It is not for us to say that the punishment here is cruel and unusual, unless we could say that it was so disporportionate to the nature of the offenses involved as to shock the moral sense of the community. We cannot. Nor can we say that the punishment is excessive. See *Rogers* v. *State,* 257 Ark. 144, 515 S.W. 2d 79.

The judgment is affirmed.