Jane MORRIS *v*. STATE of Arkansas

CA CR 87-17 731 S.W.2d 230

Court of Appeals of Arkansas
Division I
Opinion delivered June 17, 1987
[Rehearing denied July 8, 1987.]

*Achor & Rosenzweig*, by: *Jeff Rosenzweig*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case was charged with arson after the fire which destroyed her home was investigated by insurance representatives, the Pulaski County Sheriff's Department, and the Arkansas State Police. After a jury trial, she was convicted of that charge and sentenced to seven years in the Arkansas Department of Correction. From that conviction, comes this appeal.

For reversal, the appellant contends that the trial court erred in admitting testimony to show that, during a recess at trial, the

appellant asked a witness to change his testimony. She also asserts that the trial court erred in allowing testimony concerning scientific tests by a witness who was not present when the tests were performed. We find no error, and we affirm.

■ With respect to the appellant's contention concerning the admission of testimony that she attempted to influence a witness to change his testimony, the appellant first argues that, under A.R.E. Rule 403, the trial court abused his discretion in admitting the testimony. We disagree. Evidence of other crimes is admissible under A.R.E. Rule 404(b) if the evidence is independently relevant, and the probative value of the evidence outweighs the danger of unfair prejudice under A.R.E. Rule 403. *Smith* v. *State*, 19 Ark. App. 188, 718 S.W.2d 475 (1986). We think that these criteria were met in the case at bar.

■ The record indicates that the State called John Paul Proffitt as a witness. Proffitt testified that, about one month before the fire, the appellant offered to pay him to set fire to her house, but he refused. He further stated that he visited the appellant at her house on the day of the fire, and that he subsequently accompanied the appellant to her father's house, which was next door to that of the appellant; the appellant then went outside for a few minutes, leaving Proffitt in her father's house. The appellant's father then drove up to his house, and the appellant told Proffitt to go into the back bedroom so that her father would not see him. Proffitt then related that, within minutes of his entering the back bedroom, he heard the appellant exclaim that her house was on fire. He also testified that the appellant later told him that she set fire to her house herself, but that she subsequently accused him of setting the fire. Finally, Proffitt stated that he and the appellant had been in an elevator together during a recess at trial, and that she attempted to influence him to change his testimony, as reflected by the following excerpt from the record:

> Q And what was the — What do you say Jane Morris said to you?
>
> A She asked me what I was going to say. And I said, "the truth." And she said, "Like what"? And I said, "Like, for instance, that I'm going to tell them that me and James was [sic] in the back bedroom when your Daddy pulled up." And she said, "No. No. Tell them

you was [sic] walking down the road."

Proffitt's location during the minutes immediately prior to the outbreak of the fire was a relevant consideration, because the jury could infer from Proffitt's testimony that the appellant had placed Proffitt in the bedroom so that she could return to her house and set the fire. Moreover, if Proffitt had testified that he was walking down the road when the fire started, the appellant's accusation of Proffitt as the person who started the fire would have been more plausible. Under these circumstances, we think that his testimony concerning the conversation in the elevator possesses independent relevance, for it tends to show the appellant's knowledge of her own guilt, from which it may be inferred that she was the person who committed the crime. *See Poole v. State*, 262 Ark. 4, 552 S.W.2d 647 (1977); *see also* E. Inwinkelried, *Uncharged Misconduct Evidence* § 3:04 (1984). Nor do we think that the trial court erred in failing to exclude Proffitt's testimony regarding the conversation under A.R.E. Rule 403. The State was required to prove that the appellant set the fire intentionally, and the disputed testimony has a direct bearing on her knowledge and intent. Moreover, the disputed testimony was not of such character as to arouse undue hostility in the jury. *See McCormick on Evidence* § 490 at 565 (3d ed. 1984). Under these circumstances, we hold that the trial court did not abuse his discretion in admitting Proffitt's testimony.

 The appellant also argues that the trial court's admission of Proffitt's testimony concerning witness tampering was erroneous because her attorney could have rebutted that testimony had he been permitted to testify; thus, she argues, she was deprived of her right to defend herself. We find no merit in this contention. The record indicates that the attorney's rebuttal testimony would have been that he had been with the appellant at various times during the day that the alleged tampering was said to have occurred. He did not claim that he had been with the appellant at all times while she was in the courthouse; nor did he claim to have been in an elevator with the appellant and Proffitt on the day in question. Moreover, the appellant's attorney did not request permission to testify, nor did he move to withdraw as the appellant's attorney, for a mistrial, or request a continuance. Instead, his position before the trial court, which he urges on appeal, was that he was absolutely barred from testifying under

the rules pronounced in *Aetna Casualty and Surety Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984), and *Bishop* v. *Linkway Stores, Inc.*, 280 Ark. 106, 655 S.W.2d 426 (1983), and that Proffitt's testimony concerning the appellant's statements on the elevator should thus be excluded. The cases cited by the appellant, however, do not set up an absolute bar to an attorney's testimony. In *Broadway Arms*, an attorney who had a financial interest in a case in the form of a contingent fee arrangement was permitted to testify on retrial, provided that he first withdrew from the case and completely severed the attorney/client relationship. *Broadway Arms, supra.* Moreover, the *Bishop* Court stated that "[a]n attorney who is to testify in an action should withdraw from the litigation." *Bishop*, 280 Ark. at 127, *citing Eznor v. State*, 262 Ark. 545, 559 S.W.2d 148 (1977). Thus, in order for an attorney to testify in a case in which he has participated, he must first withdraw and sever the attorney-client relationship. If the appellant's attorney in the case at bar had thought his testimony to be important in his client's defense, the proper course for him to take would be to have sought to withdraw as counsel. Without deciding whether the appellant's attorney could properly have testified without withdrawing from this case had he attempted to testify, *see Boling* v. *Gibson*, 266 Ark. 310, 584 S.W.2d 14 (1979), we hold that, in the absence of a motion to withdraw on the part of her attorney, the appellant was not deprived of her right to defend herself.

 Finally, the appellant contends that the trial court erred in permitting testimony concerning scientific tests by a person who neither performed them nor was actually present when they were performed. She argues that this testimony was inadmissible hearsay which should have been excluded under A.R.E. Rule 803. We do not agree. The testimony that is the subject of this point for reversal was that of Andrew T. Armstrong, a chemist employed by Armstrong Forensic Laboratories, Inc., a firm specializing in the recovery and identification of flammable liquids from fire debris. Mr. Armstrong's testimony consisted of a statement of the results of various scientific tests, and his opinion that flammable liquids were present in samples of the debris taken from the appellant's house after the fire. Armstrong stated that, although the scientific tests upon which his opinion was based were performed by others, his conclusions were based upon

his own analysis of the data derived from those tests. Under these circumstances, we hold that the trial court did not err in admitting Armstrong's testimony concerning the test results. It is well-settled that an expert may base his opinion upon facts learned from others, even though those facts are themselves hearsay. *Dixon* v. *Ledbetter*, 262 Ark. 758, 561 S.W.2d 294 (1978); A.R.E. Rule 703. Moreover, we have held that, under Rule 703, an expert must be allowed to disclose the facts upon which his opinion is based to the trier of fact; otherwise, the opinion is deprived of its factual underpinning, and the trier of fact is left with little means for evaluating its correctness. *Carter* v. *St. Vincent Infirmary*, 15 Ark. App. 169, 690 S.W.2d 741 (1985).

Affirmed.

CORBIN, C.J., and CRACRAFT, J., agree.