Kevin M. ELDERS *v.* STATE of Arkansas

CR 94-1301                                    900 S.W.2d 170

Supreme Court of Arkansas
Opinion delivered June 12, 1995

62

*John Wesley Hall, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal is from a judgment of conviction for delivery of cocaine and a sentence of ten years imprisonment. The appellant, Kevin Elders, contends that the trial court was in error in denying his motion for directed verdict which was premised on the affirmative defense of entrapment and in concluding that imprisonment was the only available punishment option. Neither point has merit, and we affirm.

The trial of this matter was held before the circuit court without a jury, and the following facts are gleaned from State witnesses and from the testimony of Elders. The delivery of cocaine in question occurred on July 29, 1993. Elders and the confidential informant, Calvin Walraven, had been friends for some time. Walraven testified that they first met at a New Year's Eve party in January 1991. For about three weeks prior to the sale on July 29, 1993, and perhaps longer, Walraven called Elders and "ragged him" about selling controlled substances to him. During this period, he testified that he called Elders at least once a day. He stated that Elders told him that his mother, Dr. Jocelyn Elders, had been nominated for the position of United States Surgeon General by President Bill Clinton and that he was "laying low" as far as selling drugs until his mother was confirmed. Walraven also testified that he had purchased illegal drugs from Elders on prior occasions and that he never made any threats to Elders to induce him to sell drugs to him on July 29, 1993. Later that same year on December 17, Walraven testified that Elders came to his house while on break from work, and Walraven gave him a "fix," meaning a shot of narcotics.

Elders contested Walraven's rendition of what led to the

charge for selling cocaine and called it a "lie." According to Elders, he (Elders) was a drug addict and had been for ten years. He stated that Walraven hounded him to sell the cocaine, and on July 28 or July 29, 1993, he threatened to go to the press with the fact that Elders used drugs. Elders stated that he did not deal drugs, but because of his fear that Walraven's revelation of his drug usage would have an adverse impact on his mother's confirmation as Surgeon General, he stated that he succumbed to the request. Elders further testified that he and Walraven had a disagreement over Dr. Elders's views about certain social problems, which caused a rift in their friendship.

On July 29, 1993, two detectives from the Little Rock Police Department — Kyle King and Robert Mourot — observed and participated in the controlled buy from Elders to Walraven. According to Detective King, he was called by Walraven on that date at about 7:00 p.m. He went to Walraven's house and was present when Elders called sometime later. Elders informed Walraven that he was "back in business," according to Walraven, although Elders denies that he said this. Walraven then arranged by telephone to purchase an "eight ball" of cocaine from Elders at Boyle Park in Little Rock that evening. Detective Mourot went to the park to set up surveillance, followed by Detective King and Walraven.

Several minutes before 8:00 p.m., Elders arrived in his car at Pavilion #2 in the park, and Walraven in the company of Detective King pulled up in their car behind him. According to Walraven, he and Elders first embraced as a sign of their friendship. They then negotiated the price of the cocaine. Walraven asked if the price was still $250, and Elders answered that it had increased to $275. Walraven got the additional $25 from Detective King, who he introduced as "Steve," and gave Elders the money. Elders left and returned within 22 minutes at 8:12 p.m., according to the detectives, with a package which contained the cocaine. Both men tested the cocaine by sniffing samples of it from car keys, which they described as a "key bump." After the test, Elders gave the package to Walraven. Elders then used the restroom. When he returned, he said to Walraven, according to Detective King: "If you need to get anything, just call me anytime." The two men embraced again, and Elders left. Detective King described Elders as "nervous" and "jittery" at first but "happy" at the end of the deal.

At the conclusion of the testimony, the circuit court found Elders guilty of one count of delivery of cocaine. The court noted that Elders had to prove entrapment as an affirmative defense by a preponderance of the evidence and that he had failed to meet his burden of proof. Later, Elders requested reconsideration of the court's finding on entrapment and this, too, was denied.

Prior to sentencing, Elders urged the circuit court to apply Act 192 of 1993 retroactively. Act 192 amended Ark. Code. Ann. §§ 5-4-104(e)(1) and 5-4-301(a)(1) (Supp. 1991), to permit suspension and probation as alternative sentences in cases of delivery of cocaine. The circuit court refused to do this because Act 192 was not in effect at the time of the commission of the offense. The court sentenced Elders to ten years in prison pursuant to the statutes that existed at the time of the sale of cocaine.

## I. ENTRAPMENT

Elders first contends that the circuit court erred in not finding that he was entrapped into making the sale of cocaine to Walraven as a matter of law. Entrapment is an affirmative defense for which the defendant bears the burden of proof by a preponderance of the evidence. *Womack* v. *State*, 301 Ark. 193, 783 S.W.2d 33 (1990); *Wedgeworth* v. *State*, 301 Ark. 91, 782 S.W.2d 357 (1990); *McCaslin* v. *State*, 298 Ark. 335, 767 S.W.2d 306 (1989); *White* v. *State*, 298 Ark. 163, 765 S.W.2d 949 (1989). A statute sets forth what circumstances comprise entrapment:

> (b) Entrapment occurs when a law enforcement officer or any person acting in cooperation with him induces the commission of an offense by using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Ark. Code Ann. § 5-2-209(b) (Repl. 1993). In *Womack* v. *State, supra*, we stated: "Entrapment as a matter of law is established only if, viewing the evidence in a light most favorable to the State, there is no factual issue to be decided. [Citing authority.] Otherwise, entrapment is a question of fact for the jury to resolve." 301 Ark. at 197, 783 S.W.2d at 35.

In assessing whether entrapment occurred as a mat-

ter of law, we have stated that more importance attaches to the conduct of the law enforcement officers than to the predisposition of the defendant, and we have focused on the effect that that conduct would have on normally law-abiding persons. *Baker* v. *State*, 310 Ark. 485, 837 S.W.2d 471 (1992), citing *Spears* v. *State*, 264 Ark. 83, 96, 568 S.W.2d 492, 501 (1978); *Mullins* v. *State*, 265 Ark. 811, 580 S.W.2d 941 (1979). We have also stated that the defendant's conduct and predisposition to commit the crime are material and relevant to the question of whether law enforcement officers only afforded an *opportunity* to commit the offense. *Baker* v. *State, supra.*

We agree with the circuit court that there was no basis for finding entrapment as a matter of law because factual issues clearly had to be resolved in deciding the issue. For one thing, Walraven testified that he never threatened Elders by saying he would notify the press of Elders's drug abuse. Elders, on the other hand, testified that Walraven did make such a threat. Secondly, Elders testified that he never sold drugs before July 29, 1993. Walraven testified that Elders had sold him drugs before that date. Also, Walraven stated at trial that Elders told him that he was "laying low" until his mother was confirmed as Surgeon General. Elders denied that he ever said this. Finally, Walraven testified that Elders told him that he was "back in business" before the sale, a circumstance that Elders generally denied.

Here, the circuit court was the fact finder in the bench trial. After correctly finding that entrapment did not occur as a matter of law, the court then resolved the factual issues in favor of the State. We cannot say that the court committed error in doing so. Elders clearly was embroiled in drug abuse and had been for ten years by his own admission. Moreover, on July 29, 1993, he had no trouble in making the necessary contact with a source to consummate the sale and refused to identify that source at trial. As one familiar with drug trafficking, he did not fall within the ranks of the "normally law-abiding persons." Though Elders testified that he was forced to make the sale, there was no supporting evidence of duress. Indeed, Elders and Walraven, from all appearances, appeared friendly during the sale at Boyle Park. There was also Walraven's testimony that Elders told him that he was merely "laying low" and, later, was "back in business." Though Walraven pursued the sale with persistence, we are not prepared

to say that this amounted to anything more than conduct which afforded Elders an opportunity to commit the offense. The credibility of the two men lay at the heart of this matter and that was for the fact finder to resolve. *McCaslin* v. *State, supra*. The circuit court clearly did not believe major aspects of Elders's entrapment defense. We find no error in its decision.

Elders cites us to *Jacobson* v. *United States*, 112 S. Ct. 1535 (1992), in support of his entrapment argument, but we view that case as distinguishable on the facts. In *Jacobson*, two government agencies explored the defendant's willingness to break the new federal child pornography law for 2 1/2 years, using in the process five fictitious agencies. The Supreme Court concluded that what occurred was entrapment as a matter of law and stated:

> In their zeal to enforce the law, however, Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute. (Citing authority.) Where the Government has induced an individual to break the law and the defense of entrapment is at issue, as it was in this case, the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents. (Citing authority.)

112 S. Ct. at 1540.

That is not the situation in the case before us. The State's case depicted a drug dealer whose only reluctance to sell cocaine to his friend, Walraven, was due to his mother's nomination. Hence, it became a matter of Elders's finding an opportune time to sell the drugs, not a matter of Walraven forcing or even cajoling him to do so. Elders ultimately decided to go ahead with the sale. Under the evidence presented by the State, Walraven did not originate the criminal design, implant it, and induce the sale. He merely provided the opportunity for Elders to break the law. That does not constitute entrapment under § 5-2-209(b).

## II. ALTERNATIVES TO IMPRISONMENT

For his second point, Elders urges that the circuit court erred in failing to consider suspension and probation as options to

imprisonment. More specifically, Elders implores this court to apply Act 192 of 1993, now codified at Ark. Code Ann. §§ 5-4-104(e)(1) and 5-4-301(a)(1) (Repl. 1993), to the facts of this case. As already noted, Act 192 removes the prohibition against considering suspension or probation as an alternative to imprisonment.

The operative dates to consider on this point are these. On February 24, 1993, Act 192 of 1993 was approved. On July 29, 1993, Elders committed the offense. On August 13, 1993, Act 192 became effective. On March 1, 1994, Elders was charged with the delivery of cocaine. Elders's argument is two-fold. He contends that under the majority view in this country ameliorative legislative acts which reduce penalties are applied retroactively to offenses occurring prior to their effective dates. Elders further urges that the common law would apply a new act to a crime committed after passage of the act but before its effective date, and that this court has never considered that precise issue.

■ We view our law in this area as being absolutely clear. We have refrained from applying Act 192 of 1993 retroactively on multiple occasions since its passage. *See State v. Galyean,* 315 Ark. 699, 870 S.W.2d 706 (1994); *State v. Landis,* 315 Ark. 681, 870 S.W.2d 704 (1994); *Eberlein v. State,* 315 Ark. 591, 869 S.W.2d 12 (1994); *State v. Williams,* 315 Ark. 464, 868 S.W.2d 461 (1994); *State v. Whale,* 314 Ark. 576, 863 S.W.2d 290 (1993); *State v. Townsend,* 314 Ark. 427, 863 S.W.2d 288 (1993). This rule applies even when the General Assembly amends an act to reduce punishment after commission of the crime but before sentencing. *State v. Townsend, supra.* Sentencing is now controlled entirely by statute. *Id.* Only when the General Assembly expressly provides that an act should be applied retroactively will we do so. *State v. Williams, supra; State v. Townsend, supra.*

The fact that Act 192 was approved before commission of the crime and effective after the crime does not require its application to this case. The General Assembly did not provide for retroactive effectiveness in Act 192, and we view the effective date of the Act as controlling. Moreover, because sentencing is controlled by statute, we give no credence to Elders's argument that the common law should govern any facet of the punishment meted out in this case. We note on this point that there is a general

statute in the Arkansas Criminal Code which deals with retroactivity:

> (e) When all or part of a statute defining a criminal offense is amended or repealed, the statute or part thereof so amended or repealed shall remain in force for the purpose of authorizing the prosecution, conviction, and punishment of a person committing an offense under the statute or part thereof prior to the effective date of the amending or repealing act.

Ark. Code. Ann. § 5-1-103(e) (Repl. 1993). While we agree with Elders that Act 192 does not amend a "statute defining a criminal offense and, thus, does not govern the case before us," § 5-1-103(e) does evince a legislative policy in a related context that the law in effect at the time of the crime's commission should control.

We decline once more to apply Act 192 retroactively.

Affirmed.