Grover HENDERSON *v.* STATE of Arkansas

CR 95-326                                   910 S.W.2d 656

Supreme Court of Arkansas
Opinion delivered November 13, 1995

*The Law Offices of Damon Young*, by: *John M. Pickett*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Grover Henderson was convicted of delivery of a controlled substance (three rocks of crack cocaine) and sentenced to life imprisonment. He was also fined $5,000. He appeals on multiple grounds. We affirm.

Jerry Revels was a resident of Stamps and a confidential informant of then Stamps Chief of Police, Al Dyar. Chief Dyar knew Revels was a drug user, and for a period of time he paid Revels $50 per drug buy to make cases for prosecution against drug sellers. On the night of April 23, 1993, Revels was involved in a drug buy for Dyar. According to the testimony of Dyar at trial, he and Revels had discussed making a buy from a person named Lamont Reynolds. Dyar first searched Revels and then gave him a micro-cassette tape recorder to record the events and $20 to purchase the cocaine. Dyar situated himself where he could observe the purchase. Dyar saw Revels talk with Reynolds and then continue on where Revels met Henderson. Dyar, who was thirty-five or forty yards down the road, stated that he saw Henderson pull a pill bottle out of his sock and remove a packet of tinfoil. Revels took the tinfoil and gave Henderson the $20 bill. When Revels returned to Dyar's truck, Dyar opened the tinfoil and saw three rock-like substances. Dyar rewound the tape and he and Revels listened to it on the return to the police station where the cocaine and tape were turned over to Joe Thomas of the drug task force. Later that same evening, Revels gave a hand-written statement in which he described buying "three rocks" from Henderson for $20.

On August 22, 1993, Revels signed an affidavit under oath at the request of Henderson's defense counsel. In that statement,

he averred that Henderson, whose nickname was "Knot," had never sold him any rock cocaine during April of 1993. He stated that he talked to Henderson on the night of April 23, 1993, about buying crack cocaine but that a sale was not made. He stated that Chief Dyar coached him to make the statement that he bought drugs from Henderson that night, although in reality he bought the cocaine from a person coming out of Henderson's house. He stated that Dyar threatened to use a burglary charge against him, if he did not implicate Henderson.

Because of Revels's conflicting statements, a lie detector examination was scheduled before State Police Investigator Jerry Reed. The meeting occurred on September 16, 1993, but before the polygraph was administered, Revels told Investigator Reed that he had lied in his August 22 affidavit to Henderson's defense attorney and that the first statement given to Chief Dyar on April 23, 1993, was the truth. Revels then gave the investigator a handwritten statement describing Henderson's sale of the crack cocaine to him for $20. He later told the investigator that he had given the contrary affidavit to Henderson's defense counsel because Henderson had threatened him.

Trial in this matter was originally scheduled for December 6, 1993, but Revels did not appear for trial, and the prosecutor asked for and was granted a continuance. On December 8, 1993, Revels was located by Lafayette County Deputy Sheriff Peter Briggs and arrested for failure to appear at trial. On that same date, Revels gave a statement, revealing that on December 5, 1993, Henderson told Revels that he heard Revels had been subpoenaed for trial but that the subpoena had not been served. Revels's December 8 statement further reflected that Henderson told Revels that he did not have to go to court, and if Revels wanted to lay low for a while, he could stay out of sight until everything blew over. Revels further stated that Henderson picked him up the morning of the trial, took him to the Livingston Motel in Springhill, Louisiana, paid for the room, and gave him money for food.

On August 29, 1994, trial of this matter commenced. The prosecutor called Jerry Revels as a state witness. However, when Revels testified that Henderson had always wanted him to come to court to testify, the prosecutor moved to declare Revels a hostile witness, which the trial court granted. The prosecutor then used Revels's December 8 written statement to impeach Revels's

trial testimony. Later, on redirect examination of Revels, the prosecutor offered into evidence Revels's earlier statements to Al Dyar on April 23, 1993, and to Investigator Reed on September 16, 1993, wherein Revels reaffirmed his April 23 drug buy from Henderson. Defense counsel stated that he had no objection to the introduction of these two statements.

Chief Dyar also testified for the state concerning his observations of Henderson's involvement in the drug sale and, in addition, the micro-cassette tape evidencing a drug transaction between Revels and Henderson was played for the jury. Chief Dyar and Officer Briggs both had identified the voices on the tape as being those of Revels and Henderson. Based on this evidence, the jury found Henderson guilty.

Henderson first contends that the state's evidence is insufficient to support the judgment. The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Frier* v. *State*, 313 Ark. 253, 854 S.W.2d 318 (1993). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or another. *Dixon* v. *State*, 310 Ark. 460, 839 S.W.2d 173 (1992). Only evidence supporting the verdict will be considered by this court on appeal. *Moore* v. *State*, 315 Ark. 131, 864 S.W.2d 863 (1993).

As set out factually above, Chief Dyar witnessed Henderson's participation in the crack cocaine transaction with Revels. In addition, that sale had been tape recorded, and after Henderson's voice was properly identified on the tape, that tape was introduced to corroborate the other proof showing Henderson's participation in the drug sale. While Henderson questions on appeal the credibility of Chief Dyar, Dyar's credibility was a matter for the jury to weigh and resolve. Henderson also says the tape, standing alone, was too cryptic to show delivery of the drugs beyond a reasonable doubt, and without the written statements Revels made to Chief Dyar on April 23, 1993, and Investigator Reed on September 16, 1993, no sense could be made of what was said on the tape.[1] He now asserts those two statements

---

[1] To reiterate, these statements reflect Revels said that he did purchase crack cocaine from Henderson.

were prior inconsistent statements and should not have been given substantive effect. Henderson, however, failed to make that point below, and as mentioned hereinabove, Henderson simply stated he had no objection to the trial court's admitting those two statements into evidence. In sum, the trial court correctly ruled the state's evidence was sufficient to support a conviction.

Henderson next argues that the state's evidence showing Henderson had tampered with a witness some six months after the April 23, 1993 drug sale constituted reversible error because it was impermissible evidence of a separate crime or wrong under Ark. R. Evid. 404(b). He also claims such evidence was inadmissible since it was used to impeach on a collateral matter and also it was utilized as substantive proof, rather than for impeachment purposes.

■ Other jurisdictions have recognized similar evidence of subsequent crimes or wrongs as probative of consciousness of guilt. *Coronado* v. *State*, 654 So. 1267 (Fla. Dist. Ct. App. 1995) (subornation of a witness); *Peoples* v. *State*, 874 S.W.2d 804 (Tex. Ct. App. 1994) (threat to a witness); *Byrd* v. *State*, 634 A.2d 988 (Md. Ct. Spec. App. 1993) (attempted subornation of a witness); *see also State* v. *Broussard*, 649 So. 2d 726 (La. Ct. App. 1994). This court has also permitted the introduction of other crimes or wrongs as relevant to show consciousness of guilt. *See Massengale* v. *State*, 319 Ark. 743, 894 S.W.2d 594 (1995); *citing Spicer* v. *State*, 32 Ark. App. 209, 799 S.W.2d 562 (1990) (refusal to take a breathalyzer test); *Clay* v. *State*, 318 Ark. 122, 883 S.W.2d 822 (1994) (escape); *Brenk* v. *State*, 311 Ark. 579, 847 S.W.2d 1 (1993) (attempt to cover up crime); *Morris* v. *State*, 21 Ark. App. 228, 731 S.W.2d 230 (1987) (persuasion of witness to change testimony). In the *Spicer* and *Morris* cases, the court of appeals specifically discussed consciousness of guilt as an exception to Rule 404(b). Certainly a factfinder is entitled to know whether a defendant attempted to thwart his prosecution by secreting a witness who had implicated him in the charged offense. Thus, we hold that the proof regarding Henderson and his travel with Revels to Louisiana on the day set for trial was relevant circumstantial evidence of his knowledge or consciousness of guilt and was not unfairly prejudicial.

■ Because we decide that the evidence of witness tam-

pering is relevant and strongly probative of a defendant's knowledge or consciousness of guilt, we must also reject Henderson's argument that such evidence was inadmissible as collateral matter. *See Pyle* v. *State*, 314 Ark. 165, 862 S.W.2d 823 (1993). And for the same reason, Henderson's claim that the trial court erred in allowing Revels's December 8, 1993 statement to Officer Briggs is also of no import.[2] As we have already held, other like evidence was properly introduced to show Henderson's role in assisting Revels's earlier absence from trial, and Revels's December 8 written statement was merely cumulative evidence and not prejudicial. *See Bunn* v. *State*, 320 Ark. 516, 898 S.W.2d 450 (1995).

Before leaving this part of Henderson's argument, we mention his brief contention that the trial court erroneously admitted hearsay evidence through Deputy Sheriff Briggs's testimony on what the register at the Livingston Motel in Springhill, Louisiana showed for the dates December 6, 1993, through December 8, 1993. According to Briggs, the register showed a fictitious name (Arthur Johnson) and reference to a Buick automobile, which is the same make of car that Revels drove. Henderson objected to this testimony, and the court allowed it solely for impeachment purposes. A copy of the motel register was introduced into evidence by the state.

We observe again that the testimony was relevant as it was some evidence of registration in Louisiana on the trial date under a false name, and, thus, some evidence that Henderson engaged in witness tampering. This was not evidence regarding a collateral matter. Moreover, we do not view the motel register as hearsay evidence. Clearly, had the state's introduction of the register through Deputy Sheriff Briggs been for the purpose of proving that Arthur Johnson was registered at the Livingston Motel on December 6, 1993, and drove a Buick automobile, that would be hearsay evidence. The motel register, however, was not introduced to prove the truth of the matter asserted. *See* Ark. R. Evid. 801(c); *see also Owens* v. *State*, 318 Ark. 61, 883 S.W.2d

---

[2]To reiterate, we note Revels denied at trial that Henderson ever encouraged his absence from court and when the trial court allowed the state to impeach Revels by using his earlier December 8, 1993 statement to the contrary, Henderson claims its actual use was substantively to show guilt.

471 (1994). Rather, its purpose was to illustrate that the room was registered under an assumed name — a fact which Revels denied. There was no abuse of discretion in the trial court's admission of this evidence for impeachment purposes.

In his third point, Henderson argues error occurred as a result of the prosecutor's closing arguments. The first statement by the prosecutor occurred during his closing argument following the guilt phase when reference was made to Henderson's impeachment of Chief Dyar by a 1987 misdemeanor conviction for failure to pay taxes: "They said well good we got a policeman here we can attack now too." The prosecutor next intimated to the jury, according to Henderson, that Henderson had plied Revels with drugs and money so that he would not testify against him. And, thirdly, during arguments following the penalty phase, Henderson was absent and the prosecutor stated: "[H]e's not even here to accept the sentence that you're going to hand down on him."

■  Regarding the first two statements, in each instance the trial court admonished the jury that closing arguments must be reasonably related to the evidence. The response by the trial court in both instances was proper.

■  After the prosecutor's comment about Henderson's absence following the penalty phase, defense counsel moved for a mistrial which was denied. Subsequently, Henderson returned to the courtroom, and defense counsel moved the court to bring the jury in to see that Henderson was back. The trial court did so. Any possible prejudice caused by Henderson's absence and the prosecutor's remark was cured by defense counsel's proposal to bring the jury back to observe Henderson. These were matters of trial court discretion, and we find no abuse of discretion on the points raised. *See Woodruff* v. *State*, 313 Ark. 585, 856 S.W.2d 299 (1993).

■  Henderson next urges that the trial court was biased against him, which denied him a fair trial. Henderson is correct that a judge must avoid even the appearance of impropriety. Canon 2, *Arkansas Code of Judicial Conduct* (1993); *City of Jacksonville* v. *Venhaus*, 302 Ark. 204, 788 S.W.2d 478 (1990); *Bolden* v. *State*, 262 Ark. 718, 561 S.W.2d 281 (1978). We conclude, however, that this point has no merit.

■ Henderson presents three examples of the trial court's rulings at trial which, he contends, confirm an appearance of bias. The first involves the questioning of Jerry Revels by both the prosecutor and defense counsel on whether Revels was lying. When defense counsel asked whether Revels was lying, the prosecutor objected, and the objection was sustained. However, when the prosecutor asked the question to Revels, there was no objection to it by defense counsel. Henderson's argument in this regard is frivolous.

■ Henderson also points to a question by the prosecutor asking Chief Dyar whether the statements by Revels corroborated the tape, to which defense counsel objected. The basis for defense counsel's objection was that this was a task for the jury to decide. The trial court allowed it. We consider this issue a judgment call by the court. Manifestly, it does not support an allegation of bias.

■ As his third example, Henderson cites us to the trial court's ruling sustaining the prosecutor's objection to a question posed to Chief Dyar on cross-examination about whether his affidavit for arrest warrant on his incident report was true. The objection was made to the form of the question. The trial court also sustained the prosecutor's objection to defense counsel's explanation of the plea negotiation surrounding Chief Dyar's 1987 misdemeanor conviction. Both rulings are entirely plausible and exhibit no prejudice by the trial court. Nor does the trial court's allowance of the evidence regarding witness tampering, as already noted.

■ Henderson next contends that his life imprisonment sentence for first-offense delivery of crack cocaine constitutes cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution. We conclude, too, this argument forms no basis for reversal. First, the sentence falls within the limits set by the General Assembly for the offense. *See* Ark. Code Ann. § 5-64-401 (Repl. 1993). Secondly, we have held that if the sentence fixed by the trial court is within legislative limits, we are not free to reduce it even though we might consider it to be unduly harsh. *Williams* v. *State*, 320 Ark. 498, 898 S.W.2d 38 (1995); *Parker* v. *State*, 302 Ark. 509, 790 S.W.2d 894 (1990). We have carved out extremely narrow exceptions to this general statement

of the law: (1) where the punishment resulted from passion or prejudice, (2) where it was a clear abuse of the jury's discretion, or (3) where it was so wholly disproportionate to the nature of the offense as to shock the moral sense of the community. *See Williams* v. *State, supra; Dunlap* v. *State*, 303 Ark. 222, 795 S.W.2d 920 (1990); *Parker* v. *State, supra; see also Harmelin* v. *Michigan*, 501 U.S. 957 (1991).

Evidence in this case clearly reveals that Henderson's sale of three rocks of cocaine to Revels was not an isolated incident. The tape recording of the drug transaction contains Henderson's admission that he had given five rocks of cocaine to a girl to sell for him, she sold two, and the rocks Henderson was selling to Revels were the three rocks she had returned having been unable to sell them because they were soft from her having sweated on them. Two handwritten statements from Revels entered into evidence by the state corroborated the tape recording. Consistent with this evidence, the prosecutor during the penalty phase told the jury without objection that, contrary to defendant's counsel's argument, Henderson's drug involvement with Revels was not isolated, and in fact, Henderson was also involved with another person's (a girl's) attempt to sell "dope." He told the jury "it was hard to catch these guys (like Henderson), because everybody is willing to sell the dope for them. . . ."

We note that the dissenting justices conclude Henderson's life sentence runs afoul of the moral sense of the community because Henderson only sold three rocks of crack cocaine and this was his first offense. Apparently, it is true that Henderson has not been convicted of selling crack before, but as we pointed out above, Henderson has been involved in at least another drug sale transaction which was known by the jury when it returned Henderson's life sentence. The jury had every right to believe that Henderson was no innocent bystander when it comes to selling or delivering controlled substances. In any event, Henderson offered no proof or argument showing the sentence imposed here was contrary to the moral sense of the community.

Finally, we find no merit in Henderson's contention that there was cumulative error in this trial. No motion was made to this effect, and we, as a result, will not consider it. *Dillon* v. *State*, 317 Ark. 384, 877 S.W.2d 915 (1994).

The record has been reviewed for other reversible error pursuant to Supreme Court Rule 4-3(h), and none has been found.

Affirmed.

NEWBERN, BROWN and ROAF, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. The majority affirms a life sentence for a first offense involving a $20 sale of .238 grams of crack cocaine (3 rocks). This amounts to one strike and you're out. I would affirm the conviction and remand for resentencing on grounds that the sentence was so wholly disproportionate to the nature of the offense as to shock the moral sense of the community. As the majority opinion makes clear, that is one standard by which we gauge the propriety of sentences. *See, e.g., Williams* v. *State*, 320 Ark. 498, 898 S.W.2d 38 (1995).

The sentence prescribed by the General Assembly for the delivery of less than 28 grams of cocaine is "not less than ten (10) years nor more than forty (40) years, or life" plus a fine not exceeding $25,000. Ark. Code Ann. § 5-64-401(a)(1)(i) (Repl. 1993). The range for the jury to consider is very broad: 10 years to life imprisonment for a quantity of drugs up to 28 grams.

Henderson contends that a life sentence for first-offense delivery of three rocks of crack cocaine constitutes cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution. I agree. This is the first time that a life sentence has been affirmed in this State where the defendant's crime was one offense and a first offense and where the quantity of drugs sold was such a minor amount. While I am extremely reluctant to reverse the jury in this case on grounds that it did not represent the moral sense of the community, I must conclude that it did not. The United States Supreme Court has held that under similar circumstances a reversal of the sentence is warranted. *See Solem* v. *Helm*, 463 U.S. 277 (1983). In *Solem*, the Court affirmed reversal of a sentence of life without parole for writing a $100 "no account" check. The defendant had 6 prior felonies. The majority did so for proportionality reasons, finding that Solem was treated more harshly in the state than were other criminals who committed more serious crimes. The Court affirmed reversal under the Eighth Amendment to the U.S. Constitution.

Subsequently, in *Harmelin* v. *Michigan*, 501 U.S. 957 (1991),

a splintered court in a plurality decision affirmed a first-offense sentence of life without parole for possession of 672 grams of cocaine. Six members of the Court, however, still endorsed a proportionality review. According to Justice Kennedy, speaking for three members of the Court in a concurring opinion, a comparative analysis of a sentence with other sentences is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005.

In the case before us, I conclude that an inference of gross disproportionality is evident when a first offense for a $20 sale of a minimal amount of crack cocaine garners a life sentence. A comparative analysis of convictions for drug sales which we have affirmed in recent years confirms that the sentence was disproportionate to the crime:

- Affirmed a ten-year sentence for sale of cocaine. *Elders* v. *State*, 321 Ark. 60, 900 S.W.2d 170 (1995).

- Affirmed a 75-year sentence for selling 1 rock of crack cocaine where the defendant had 7 prior felony convictions. *Williams* v. *State*, 320 Ark. 498, 898 S.W.2d 38 (1995).

- Affirmed a 15-year sentence for first count of a sale of a controlled substance and life imprisonment for a second count for a drug sale occurring at a later date. *Robinson* v. *State*, 317 Ark. 407, 878 S.W.2d 405 (1994) (trial counsel failed to object to the jury's sentence of life when the verdict form had provided 80 years as the maximum).

- Affirmed a life sentence for possession with intent to deliver of 40 pounds of marijuana, in excess of 112 grams of cocaine, LSD, drug paraphernalia, and for possession by a felon of a firearm. *Hendrickson* v. *State*, 316 Ark. 182, 871 S.W.2d 362 (1994).

- Affirmed a sentence of 32 years for possession of 4 bags of marijuana with intent to deliver and drug paraphernalia where the defendant was a habitual offender with 7 prior convictions. *Hudson* v. *State*, 316 Ark. 360, 872 S.W.2d 68 (1994).

- Affirmed a sentence of 19 years for 4 offenses which included continuing criminal enterprise, public servant bribery, delivery of cocaine, and use of a communication facility to further a drug felony. *Leavy* v. *State*, 314 Ark. 231, 862 S.W.2d 832 (1993).

- Affirmed 10 years in prison and fines for 4 counts of delivery of marijuana, mushrooms with a controlled substance, and 1/8 of an ounce of cocaine. *Baker* v. *State*, 310 Ark. 485, 837 S.W.2d 471 (1992).

- Affirmed a life sentence for sale of 35 capsules of cocaine and possession of a firearm where the defendant was a habitual offender. *Gomez* v. *State*, 305 Ark. 496, 809 S.W.2d 809 (1991).

- Affirmed a sentence of 35 years for sale of 1 rock of crack cocaine where defendant had one prior conviction and was charged as a habitual offender. *Parker* v. *State*, 302 Ark. 509, 790 S.W.2d 894 (1990).

- Affirmed a conviction of 60 years for each of 2 counts of delivery of a controlled substance where defendant was a habitual offender. *Williams* v. *State*, 292 Ark. 616, 732 S.W.2d 135 (1987).

- Affirmed life sentence for delivery of a "sack" of cocaine sold for $10,000. *Hoback* v. *State*, 286 Ark. 153, 689 S.W.2d 569 (1985).

These cases highlight the uniqueness and the disproportionality of the sentence meted out in this case.

There are two final points that need to be made. A case calling for a consideration of proportionality would be extremely rare. But our case law has contemplated such a review, to the extent of determining whether the sentence is wholly disproportionate to the crime charged, at least since 1941, and has reiterated the principle multiple times since then. *See Williams* v. *State, supra; Carle* v. *Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993); *Dunlap* v. *State*, 303 Ark. 222, 795 S.W.2d 920 (1990); *Parker* v. *State, supra; Thompson* v. *State*, 280 Ark. 265, 658 S.W.2d 350 (1983); *Chaviers* v. *State*, 267 Ark. 6, 588 S.W.2d 434 (1979); *Pridgeon* v. *State*, 266 Ark. 651, 587 S.W.2d 225 (1979); *Stout*

v. *State*, 263 Ark. 355, 565 S.W.2d 23 (1978); *Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1977); *Hinton* v. *State*, 260 Ark. 42, 537 S.W.2d 800 (1976); *Carter & Burkhead* v. *State*, 255 Ark. 225, 500 S.W.2d 368 (1973); *Davis* v. *State*, 246 Ark. 838, 440 S.W.2d 244 (1969); *Geurin* v. *City of Little Rock*, 203 Ark. 103, 155 S.W.2d 719 (1941); *see also Scott* v. *State*, 27 Ark. App. 1, 764 S.W.2d 625 (1989).

In addition, the General Assembly in its sentencing guidelines for guilty pleas and bench trials has recognized the need for proportionality in sentencing. Act 532 of 1993 seeks to ensure that the "sanctions imposed following conviction are proportional to the seriousness of the offense of conviction and the extent of the offender's criminal history." Ark. Code Ann. § 16-90-801(b)(1) (Supp. 1993).[1] In short, both this court and the General Assembly have endorsed proportionality review of the offense vis-à-vis the punishment in limited circumstances.

Had Henderson been charged with witness tampering or obstruction of justice and convicted, or had he been charged and convicted of a second sale of crack cocaine, I would view this sentence differently. But the sole charge for which he was convicted and sentenced was the $20 sale of crack cocaine, which was his first offense. I would affirm the conviction but reverse the life sentence and remand for resentencing.

NEWBERN and ROAF, JJ., join.

---

[1]Following a guilty plea for Henderson's offense or a bench trial resulting in conviction, a sentence of 3 1/2 years would have been presumed under the sentencing standards grid. Ark. Code Ann. § 16-90-803(a)(3) (Supp. 1993). Because this presumptive sentence is less than the minimum sentence prescribed by law, the minimum sentence of 10 years would apply. Ark. Code Ann. § 16-90-803(b)(3)(c) (Supp. 1993). Trial courts may deviate from the presumptive sentence when aggravating circumstances such as evidence tampering are involved. Ark. Code Ann. § 16-90-804(d)(2)(J) (Supp. 1993).