2009 Ark. 523

**ARKANSAS DEPARTMENT OF CORRECTION, Appellant,**

v.

**Frank WILLIAMS, Jr., Appellee.**

No. 08–1031.

Supreme Court of Arkansas.

Oct. 29, 2009.

Rehearing Denied Dec. 10, 2009.

Dustin McDaniel, Att'y Gen., by: C. Joseph Cordi, Jr., Ass't Att'y Gen., for appellant.

Jennifer Horan Federal Public Defender, by: Julie Brain and Josh Lee, Ass't Federal Defender, for appellee.

JIM GUNTER, Justice.

The Arkansas Department of Correction (ADC) appeals the grant of summary judgment in favor of Williams, which effectively stayed Williams's execution, and the denial of its own motion for summary judgment. ADC asks this court to hold that Act 1296, passed April 9, 2009, has rendered Williams's action moot, and to therefore dismiss the suit and lift the injunction on Williams's execution. In the alternative, ADC asks this court to reverse the trial court's decision on the merits because (1) ADC has sovereign immunity, and (2) the administrative directive in question is not a "rule" as that term is defined in the Administrative Procedure Act (APA), therefore the APA is not applicable. Because this appeal involves a substantial question of law concerning the validity, construction, or interpretation of an act of the General Assembly, this court has jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(b)(6). We agree that Act 1296 has rendered the basis for the trial court's grant of summary judgment moot; therefore, we reverse the grant of summary judgment and remand.

Williams was accused of killing Clyde Spence, his former employer, on the night of October 7, 1992, after Spence had fired Williams earlier that day. Williams was found guilty of capital murder and sentenced to death, and this court affirmed his conviction and sentence in an opinion issued July 10, 1995. *See Williams v. State,* 321 Ark. 344, 902 S.W.2d 767 (1995). In 2006, the United States Court of Appeals for the Eighth Circuit affirmed the denial of habeas petitions filed by Williams. *See Williams v. Norris,* 461 F.3d 999 (8th Cir. 2006).

On May 6, 2008, Williams filed a complaint for declaratory judgment in the Pulaski County Circuit Court, alleging that the administrative directive (AD) promulgated by the ADC, which governs the procedure for executions, was adopted in violation of the APA; that the AD violated Ark.Code Ann. § 5–4–617(a)(1) (Repl.2006) by allowing a lethal injection cocktail made up of three drugs, rather than the statutorily prescribed two; and that the AD violated § 5–4–617(a)(1) by establishing a lethal injection procedure that is not "continuous."[1] On May 23, 2008, ADC

---

1. Arkansas Code Annotated section 5–4–617(a)(1) (Repl.2006) provides: "The punishment of death is to be administered by a continuous intravenous injection of a lethal quantity of an ultra-short-acting barbiturate in combination with a chemical paralytic agent until the defendant's death is pro-

filed a motion to dismiss Williams's complaint, asserting sovereign immunity or, in the alternative, arguing that Williams had failed to state a claim upon which relief can be granted because (1) the lethal injection protocol is not a "rule" as that term is defined in the APA; (2) the lethal injection protocol is fully consistent with Ark.Code Ann. ₃ § 5–4–617. On June 10, 2008, ADC's motion to dismiss was denied.

On June 20, 2008, ADC simultaneously filed an answer to Williams's complaint and a motion for summary judgment and brief in support. In its motion for summary judgment, ADC asserted essentially the same arguments presented in its motion to dismiss: that the AD, which it identified as AD 08–28, was not a "rule" as defined by the APA, and therefore the APA's rulemaking procedures were not applicable; and that AD 08–28 did not violate § 5–4–617. Williams filed a response to ADC's motion for summary judgment on July 14, 2008, as well as a cross-motion for summary judgment on Count I of his complaint, namely the alleged violation of the APA.

After receiving ADC's response to the cross-motion for summary judgment on August 7, 2008, the trial court issued an order on August 28, 2008, granting Williams's cross-motion for summary judgment on Count I. The order stated: "The plaintiff is awarded partial declaratory summary judgment that AD 08–28 is subject to the Administrative Procedures Act and that as of the present date it is not valid and may not be invoked by the defendant for any purpose against the plaintiff." Also on August 28, 2008, the trial court entered an order denying ADC's motion for summary judgment with respect to the allegation that AD 08–28 was not subject to the APA and finding that the court's order concerning Williams's cross-motion

for summary judgment rendered moot the remaining portions of ADC's motion for summary judgment. From these orders, ADC filed a notice of appeal on August 29, 2008.

During the 2009 legislative session, Act 1296, entitled "An Act to Clarify the Existing ₄Procedures for Capital Punishment by Lethal Injection; and For Other Purposes," was approved by the governor and became effective April 13, 2009. Act 1296 amended Ark.Code Ann. § 5–4–617 to provide, in pertinent part, that (1) the policies and procedures for carrying out the sentence of death under this statute are not subject to the APA, and (2) the sentence of death is to be carried out by "intravenous lethal injection of one (1) or more chemicals" to be determined by the Director of the Department of Correction. The Act also omitted any requirement that the injection be "continuous."

Pursuant to these changes, ADC filed a motion to dismiss Williams's lawsuit on April 21, 2009, asserting that Williams's arguments had been rendered moot by the amendments to the statute. ADC requested that this court lift the trial court's orders and the injunction against executing Williams pursuant to AD 08–28 or, in the alternative, that the case be remanded with instructions for the trial court to enter an order setting aside its previous orders and lifting the injunction against the execution. Williams responded on May 1, 2009, arguing that the appeal was not rendered moot by the amendments to the statute and that a live controversy still existed because an injunction was still in place. In a per curiam delivered May 14, 2009, this court held ADC's motion in abeyance and ordered supplemental briefing on whether the enactment of Act 1296 rendered the instant appeal moot; wheth-

nounced according to accepted standards of medical practice."

er Act 1296 may be applied to Williams's sentence and execution; and whether, if the appeal is moot, this court must further decide whether to vacate the trial court's injunction. The instant appeal, including this supplemental issue, is now properly before this court for review.

We first address whether Williams's complaint has been rendered moot by the passage of Act 1296 of 2009. ADC asserts that, following the passage of Act 1296, all controversies regarding the previous version of the statute no longer exist, and Williams's arguments have been rendered moot. As a general rule, appellate courts of this state will not review issues that are moot. *Warren Wholesale Co. v. McLane Co.*, 374 Ark. 171, 286 S.W.3d 709 (2008). To do so would be to render advisory opinions, which this court will not do. *Id.* A case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.*

To support its argument, ADC cites several of this court's opinions, including *Allison v. Lee County Election Commission*, 359 Ark. 388, 198 S.W.3d 113 (2004), and *Warren Wholesale, supra.* In *Allison*, this court held that a candidate's appeal, challenging the statute that provides filing deadlines for certain candidates, was moot, in part because the election the candidate wished to challenge had occurred two years previously, but also because the challenged statute had been amended, and

> [a]ny opinion this court would give on the old version of the law would simply be an advisory opinion, a practice in which this court will not engage.... Even if this court were to address the trial court's interpretation ... such an opinion would not prevent future litigation because any challenge to [the statute] in the future will involve the amended version of the statute passed in 2003.

359 Ark. at 391, 198 S.W.3d at 115. Similarly, in *Warren Wholesale,* a challenge to the validity of a certain rule of the Tobacco Control Board was rendered moot when the challenged rule was repealed while the appeal was pending, and this court specifically held that the principles of mootness apply equally to an agency regulation that is repealed while the appeal challenging the regulation is pending. Consequently, there was no longer a controversy between the parties, the appeal was moot, and the case was remanded for "entry of a decree stating that the grounds upon which the trial court relied for entering the declaratory judgment and injunction have become moot by the repeal of the challenged section." 374 Ark. at 176, 286 S.W.3d at 712. *See also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (holding that controversy involving banking regulations was rendered moot by 1987 amendments to Bank Holding Company Act); *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S.Ct. 448, 64 L.Ed. 808 (1920) ("Where by an act of the parties, or a subsequent law, the existing controversy has come to an end, the case becomes moot and should be treated accordingly."); *Langford v. Day*, 134 F.3d 1381 (9th Cir.1998) (holding that an inmate's challenge to execution by hanging was moot once the Montana legislature abolished hanging as a method of execution).

Williams responds by arguing that his appeal is not moot because there is still a valid injunction in place forbidding ADC from putting Williams to death using their lethal injection protocol, and only if this court rules in ADC's favor on the merits of the appeal can ADC obtain the relief that it seeks. Therefore, Williams argues, this is not a case in which any judgment rendered would have no practical legal effect upon a then-existing legal controversy.

While we agree that the appeal itself is not moot, as there is a summary judgment order and injunction in place that must be reversed or affirmed, if the provisions of Act 1296 do apply to Williams, then the arguments he made before the trial court will indeed be |₇rendered moot.

 We next consider whether Act 1296 should apply to the instant case.[2] Williams asserts that Act 1296 cannot be applied in the instant case because it was not expressly made retroactive by the General Assembly. Williams cites the well-established rule that a sentence must be in accordance with the statutes in effect on the date of the crime. *State v. Ross,* 344 Ark. 364, 39 S.W.3d 789 (2001). Sentencing is controlled entirely by statute, and only when the General Assembly expressly provides that an act should be applied retroactively will we do so. *Elders v. State,* 321 Ark. 60, 900 S.W.2d 170 (1995). Williams also asserts that Ark. Code Ann. § 5–1–103(e) (Repl.2006) requires this court to apply changes to criminal legislation prospectively. Section 5–1–103(e) provides:

> When all or part of a statute defining a criminal offense is amended or repealed, the statute or part of the statute that is amended or repealed remains in force for the purpose of authorizing the prosecution, conviction, and punishment of a person committing an offense under the statute or part of the statute prior to the effective date of the amending or repealing act.

Finally, Williams also asserts that a retroactive application of Act 1296 would violate the ex post facto clause. An ex post facto law is one that makes an action done before the passing of the law, and which was innocent when done, criminal or one that aggravates a crime, or |₈makes it greater than it was, when committed. *Garrett v. State,* 347 Ark. 860, 69 S.W.3d 844 (2002). For the ex post facto clause to apply, there must be a change in the law that either criminalizes a previously innocent act or that increases the punishment received for an already criminalized act. *Id.* Williams argues that, in the present case, he may experience a more painful death and will certainly experience more mental anxiety and fear in the time leading up to his death.

 Williams is correct that a sentence must be in accordance with the statutes in effect on the date of the crime, and that a change in sentencing, applied retroactively, would violate the ex post facto clause. We disagree, however, with Williams's characterization of Act 1296 as a sentencing statute; we find Act 1296 is not a sentencing statute and will not be applied "retroactively." The United States Supreme Court has stated:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.

---

2. We note that, on October 7, 2009, ADC filed a motion for this court to take judicial notice of a pleading recently filed in federal court regarding an ongoing constitutional challenge to the lethal injection protocol, to which Williams is a party. This pleading stated that Act 1296 removed the protections of the APA from the lethal injection protocol. ADC asked this court to find that, through this filing, Williams has conceded that the lethal injection protocol is not subject to the APA; however, we agree with Williams that acknowledging this change in the law, which is not in dispute, has no bearing on the argument presently before us, namely whether the changes pursuant to Act 1296 should be applied to Williams.

The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

*Landgraf v. USI Film Products,* 511 U.S. 244, 269–70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In the present case, before the Act was enacted, Ark.Code Ann. § 5–4–617 was silent on the applicability of the APA. The Act clarified the statute in that section 5–4–617 now specifies that the APA does not apply to the lethal injection procedure. The Act necessarily applies to all those who will be executed after its enactment. Williams was sentenced to death for his crime, and Act 1296 did not change either his criminal liability or his sentence. Thus, there was no need for the General Assembly to state that the Act may be applied retroactively, because the Act will not be "retroactively" applied but will instead apply to all executions held after the Act's enactment, including Williams's. *See, e.g., In re Fox,* 138 Wash. App. 374, 158 P.3d 69, 76 (2007) ("A statute that clarifies, rather than alters, a current law does not operate retroactively even when applied to transactions conducted before its enactment."); *Western Security Bank v. Superior Court,* 15 Cal.4th 232, 62 Cal.Rptr.2d 243, 933 P.2d 507 (1997) ("[A] statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment. . . . Such a legislative act has no retrospective effect because the true meaning of the statute remains the same."). Because a law must be retroactive to violate the ex post facto clause, and we find the Act will not be retroactively applied, there is no need to address Williams's argument that the Act violates the ex post facto clause. *See, e.g., Duncan v. State,* 337 Ark. 306, 987 S.W.2d

721 (1999) (explaining that a law is in violation of the ex post facto clause if it is retroactive and disadvantages the accused).

Based on the foregoing, we hold that the basis for the trial court's injunction has been rendered moot and therefore reverse the grant of summary judgment. We remand to the trial court with instructions to lift the injunction and dismiss Williams's complaint. Our disposition on this point renders it unnecessary to address the remainder of ADC's arguments on appeal.

Reversed and remanded.

WILLS, J., not participating.

Special Justice STUART JACKSON joins.