SCOTT *v*. HOUK, WARDEN.

[Cite as *Scott v. Houk*, 127 Ohio St.3d 317, 2010-Ohio-5805.]

*Death penalty — Method of execution — Lethal-injection protocol — Ohio provides no postconviction-relief or other state-law mode of action to litigate issue of whether lethal-injection protocol is constitutional under Baze v. Rees — Lack of such a forum is not unconstitutional — Certified question of state law answered in the negative.*

(No. 2009-1369 — Submitted September 14, 2010 — Decided December 2, 2010.)

ON ORDER from the United States District Court, Northern District of Ohio, Eastern Division, Certifying a Question of State Law, No. 4:07-CV-0753.

_____

{¶ 1} On July 29, 2009, Judge John Adams of the United States District Court, Northern District of Ohio, Eastern Division, certified the following question of state law to this court: "Is there a post-conviction or other forum to litigate the issue of whether Ohio's lethal injection protocol is constitutional under *Baze v. Rees*, 553 U.S. 35, 128 S.Ct. 1520,170 L.Ed.2d 420 (2008), or under Ohio law?" The district court recertified the question to us on September 3, 2009, due to an inadvertent failure to provide notice of the original order to the parties. We accepted the question for review. 123 Ohio St.3d 1420, 2009-Ohio-5340, 914 N.E.2d 1062. On September 14, 2010, we heard oral argument from the petitioner. The respondent forfeited his argument by not filing a merit brief.

{¶ 2} There are several established methods for an Ohio death-penalty defendant to receive state review of his or her case. These methods, created by the legislature, are clear in their application to death-penalty defendants. See Section 2(B)(2)(c), Article IV, Ohio Constitution (direct appeal of death-penalty

case to this court); R.C. 2953.21 (postconviction-relief procedure for persons convicted of crimes, including those sentenced to death); and R.C. 2725.01 (state habeas corpus petition). Additionally, we allow a death-penalty defendant to file an application to reopen his or her appeal in the courts of appeals and in this court under App.R. 26(B). See, e.g., *State v. Ketterer,* 113 Ohio St.3d 1463, 2007-Ohio-1722, 864 N.E.2d 650.

**{¶ 3}** We have held that these opportunities for review more than satisfy defendants' "constitutional rights to due process and fair trials" while also protecting Ohio's "inherent power to impose finality on its judgments." *State v. Steffen* (1994), 70 Ohio St.3d 399, 407, 412, 639 N.E.2d 67.

**{¶ 4}** The Ohio General Assembly has not yet provided an Ohio-law cause of action for Ohio courts to process challenges to a lethal-injection protocol, and given the review available on this issue through Section 1983, Title 42, U.S.Code, for injunctive relief against appropriate officers or federal habeas corpus petitions, we need not judicially craft a separate method of review under Ohio law. Accordingly, until the General Assembly explicitly expands state review of death-penalty cases by creating a methodology for reviewing Ohio's lethal-injection protocol, we must answer the certified question as follows: There is no state postconviction relief or other state-law mode of action to litigate the issue of whether a specific lethal-injection protocol is constitutional under *Baze v. Rees*, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420, or under Ohio law.

So answered.

LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

O'CONNOR, J., concurs separately.

BROWN, C.J., and PFEIFER, J., dissent.

_____

**LUNDBERG STRATTON, J., concurring.**

{¶ 5}   I concur in the majority's decision to answer the certified question by concluding that currently there is no state postconviction or other avenue to litigate the issue of whether Ohio's lethal injection protocol is constitutional under *Baze v. Rees* (2008), 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420, or under Ohio law.

{¶ 6}   The dissent of Chief Justice Brown contends that this court has abdicated its responsibility to the federal courts to hear and settle this matter, thereby shirking its duties to enforce and interpret Ohio law.  The dissent begins from the faulty starting point that the central issue in this case is whether we will ensure that the delivery of death does not needlessly inflict severe pain.  However, the true issue in this case is whether this court is required, via judicial fiat, to set up yet another layer of appeals when the legislature has not.  For the reasons that follow, I concur with the majority's decision today that Ohio has no such postconviction or other forum to litigate the issue of whether Ohio's lethal injection protocol is constitutional under *Baze* or under Ohio law, that the federal courts are well equipped to handle such challenges, and that this court need not create an appellate procedure where one does not exist.

{¶ 7}   The dissent seems to begin with the assumption that all methods of executions are suspect.  As noted in *Baze v. Rees*, "[r]easonable people of good faith disagree on the morality and efficacy of capital punishment, and for many who oppose it, no method of execution would ever be acceptable."  *Baze*, 553 U.S. at 61, 128 S.Ct. 1520, 170 L.Ed.2d 420.  This philosophical debate, however, is misplaced in this case.  Our duty is to uphold the law, not to opine on whether there could be a more humane manner of administering the penalty of death in Ohio.

{¶ 8}   Capital punishment is constitutional.  *Gregg v. Georgia* (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859.  Therefore, "[i]t necessarily follows that there must be a means of carrying it out.  Some risk of pain is inherent in any

method of execution — no matter how humane — if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 553 U.S. at 47.

**Eighth Amendment**

{¶ 9} Our decision today is guided by the Eighth Amendment to the Constitution, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Further guidance is found in R.C. 2949.22(A), Ohio's lethal injection statute, which provides that "a death sentence shall be executed by causing the application to the person, upon whom the sentence was imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death."

{¶ 10} Throughout the history of this country, the United States Supreme Court has time and again upheld various methods of carrying out a sentence of death. "For much of American history, capital punishment was carried out by public hanging." Elliot Garvey, A Needle in the Haystack: Finding a Solution to Ohio's Lethal Injection Problems (2010), 38 Cap.U.L.Rev. 609, 622. In 1878, the court upheld the use of a firing squad in carrying out executions in *Wilkerson v. Utah* (1878), 99 U.S. 130, 134-135, 25 L.Ed. 345. In 1890, the court upheld the use of the newly created electric chair in *In re Kemmler* (1890), 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519. Today, at least 36 states, along with the federal government, have now adopted lethal injection as the exclusive or primary means of implementing the death penalty. *Baze*, 553 U.S. at 42-43.

{¶ 11} The dissent seems to advocate a 100 percent guarantee of a painless death. But the *Baze* court, in upholding Kentucky's lethal injection protocol, held that "[s]imply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and

unusual." Id. at 50. *Baze* held that "[p]ermitting an Eighth Amendment violation to be established on [a showing that better alternatives exist] would threaten to transform courts into boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology. Such an approach finds no support in our cases, would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude on the role of state legislatures in implementing their execution procedures – a role that by all accounts the States have fulfilled with an earnest desire to provide for a progressively more humane manner of death." Id. at 51.

## R.C. 2949.22

**{¶ 12}** The dissent argues that although the Eighth Amendment may not bar Ohio's new execution protocol, R.C. 2949.22(A) provides greater protection against pain and suffering than does the Eighth Amendment prohibition against cruel and unusual punishment. As noted in our order, there are already several established methods for an Ohio capital defendant to receive state review of his or her case. These methods, created by the Constitution or the legislature, are clear in their application to capital defendants. Section 2(B)(2)(c), Article IV of the Ohio Constitution authorizes a direct appeal to this court of all death penalty cases. R.C. 2953.21 creates postconviction relief procedures for persons convicted of crimes, including those who have been sentenced to death. R.C. 2725.01 prescribes procedures for state habeas corpus petitions that apply to capital defendants. Finally, capital defendants may file an application for reopening their appeals in the court of appeals and in this court under App.R. 26(B). Apart from state review, federal review includes federal habeas corpus under Section 2254, Title 28, U.S. Code, as well as an action under Section 1983, Title 42, U.S. Code, for injunctive relief.

{¶ 13} This court is correct to refrain from creating another appellate process when the General Assembly has not so provided.

**Declaratory Judgment and Mandamus**

{¶ 14} The dissent highlights what it believes to be two avenues by which a death-row petitioner may challenge the method of execution in Ohio courts: declaratory judgment actions and mandamus. In my view, neither of these methods is necessary, as the federal courts have done a thorough job thus far of adjudicating this issue. Further, a writ of mandamus to ensure that the warden fulfills his duty to carry out the death penalty quickly and painlessly under R.C. 2949.22 would simply order the warden to do that which he or she is already required to do by law and that which he or she is already doing.

**Conclusion**

{¶ 15} The Ohio General Assembly did not choose to create an Ohio cause of action specifically to litigate the issue of whether Ohio's lethal injection protocol is constitutional under *Baze* or under Ohio law. I support this court's decision not to create a cause of action that does not exist, but rather to leave that policy decision up to the General Assembly.

{¶ 16} With the existing system of direct appeals, postconviction relief, state habeas corpus, applications for reopening, federal habeas corpus, and Section 1983 actions, along with the various levels of appeals attendant to each action, there are more than adequate protections for those given the ultimate sentence. At some point, the victims' families and the state deserve finality in judgment. For those reasons, I concur in the majority's decision to answer the certified question in the negative.

LANZINGER, J., concurs in the foregoing opinion.

_____

**O'CONNOR, J., concurring.**

{¶ 17} I concur in the majority's answer to the certified question that there is no state postconviction relief or other state-law mode of action to litigate the issue of whether a specific lethal-injection protocol is constitutional under *Baze v. Rees* (2008), 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420, or under Ohio law. I write separately, however, to address the flawed argument in the dissent of Chief Justice Brown, that a declaratory-judgment action is the proper avenue for litigating this issue.

{¶ 18} The dissent declares that Michael Scott has the right to a quick and painless death under R.C. 2949.22(A) and that Ohio courts are obligated to enforce that right by determining whether the lethal-injection protocol satisfies the statutory criteria. The dissent sanctions a declaratory-judgment action as the appropriate mechanism through which a petitioner can protect his right. I disagree.

{¶ 19} Ohio's Declaratory Judgment Act authorizes courts of record to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.C. 2721.02(A). And as this court has held, a declaratory-judgment action provides a "means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 8.

{¶ 20} The flaw in the dissent's position, however, is that R.C. 2949.22(A) does not create a cause of action to enforce any supposed right to a quick and painless death. *Cooey v. Strickland* (C.A.6, 2009), 589 F.3d 210, 234. Rather, the statute directs that the death sentence be carried out by lethal injection of a drug, or combination of drugs, of sufficient dosage to quickly and painlessly cause death to the person upon whom the death penalty was imposed. R.C. 2949.22(A). The statute, therefore, imposes a *duty* upon the individual administering the lethal-injection protocol, but it does not plainly create any *right* to a quick and painless death as the dissent mistakenly presumes. In the absence

of demonstrating an established right, a declaratory judgment does not lie under R.C. 2721.02(A).

{¶ 21} The dissent's summary suggestion that all death-row petitioners should be permitted to assert both constitutional and statutory challenges to the lethal-injection protocol by means of a declaratory-judgment action is also flawed by the speculative nature of such a claim. While the declaratory-judgment statutes should be liberally construed, the statutes are not without limitation:

{¶ 22} "Most significantly, in keeping with the long-standing tradition that a court does not render advisory opinions, they allow the filing of a declaratory judgment only to decide 'an actual controversy, the resolution of which will confer certain rights or status upon the litigants.' *Corron v. Corron* (1988), 40 Ohio St.3d 75, 79, 531 N.E.2d 708. Not every conceivable controversy is an actual one. As the First District aptly noted, in order for a justiciable question to exist, ' " '[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events * * * and the threat to his position must be actual and genuine and not merely possible or remote.' " ' *League for Preservation of Civil Rights v. Cincinnati* (1940), 64 Ohio App. 195, 197, 17 O.O. 424, 28 N.E.2d 660, quoting Borchard, Declaratory Judgments (1934) 40." *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9.

{¶ 23} A death-row petitioner's challenge to the lethal-injection protocol is based on the *possibility* that the application of the protocol could violate his rights under the Constitution and/or Ohio law. Thus, the claim would be contingent on the happening of a hypothetical future event, which is an impermissible basis to support a declaratory-judgment action. *Ex parte Alba* (Tex.Crim.App.2008), 256 S.W.3d 682, a case upon which the dissent relies, lends further credence to my view. Therein, the court rejected a death-row convict's application for habeas relief challenging the lethal-injection protocol

and addressed the pitfalls of using a declaratory-judgment action to challenge the protocol:

{¶ 24} "[E]ven if the mixture currently used for lethal injection is determined to violate the Eighth Amendment, Applicant would still not be entitled to release or retrial — he would still be subject to the same sentence, which would be carried out using a different mixture as determined by the Texas Department of Criminal Justice. Additionally, the three-drug mixture Applicant complains about may not even be used when the date of his execution is set. Therefore, any consideration of the merits would result in a declaratory judgment and would not result in relief for Applicant. *See Ex Parte Puckett,* 161 Tex.Crim. 51, 274 S.W.2d 696, 697 (1954) (stating, 'This court is not authorized to enter a declaratory judgment.')." Id. at 686.

{¶ 25} In addition to the remoteness of Scott's challenge to the possibility that the injection protocol may cause him severe pain, the current protocol may not even be used when his execution date is set. In fact, media outlets repeatedly have reported on an alleged shortage of sodium thiopental, the drug currently used by Ohio in executions. See, e.g., Kathy Lohr, States Delay Executions Owing to Drug Shortage (Sept. 16, 2010), http://www.npr.org/templates/story/story.php?storyId=129912444 (last accessed Nov. 10, 2010). Furthermore, as noted in *Ex parte Alba*, a declaratory judgment potentially would not offer Scott any relief from his death sentence.

{¶ 26} Finally, the "possibility" that the lethal-injection protocol would cause Scott or any death-row convict severe pain is further undermined by the recent holding in *Cooey*, 589 F.3d 210. In *Cooey*, the Sixth Circuit Court of Appeals thoroughly reviewed evidence presented regarding Ohio's current one-drug protocol and determined that the current protocol is similar to the three-drug protocol held constitutional by the United States Supreme Court in *Baze*. 589 F.3d at 221. The court therefore concluded that the risk of severe pain was no

greater — and likely less — than that inherent in any constitutional lethal injection. Id.

{¶ 27} The dissent's endorsement of a declaratory-judgment action for litigating Scott's claim is not only misguided, it is unsupported by Ohio's Declaratory Judgment Act. Accordingly, I concur in the majority's judgment.

_____

**BROWN, C.J., dissenting.**

**Introduction**

{¶ 28} In this case, Michael Scott, who has been sentenced to death, does not ask to stay the executioner's hand, but instead prays that the tools used to terminate his life will be humane. At the heart of his plea is a question that probes our common conscience: whether we will ensure that the delivery of death does not needlessly inflict severe pain upon those we have condemned. Cases such as this are the measuring stick of our civilization, in which we stake the boundaries of our government's obligation to protect the weakest, the least popular, and the worst of its members.

{¶ 29} The federal court that is considering Scott's case has asked us a question of Ohio law: whether there is a court in Ohio in which Scott may seek to enforce his rights regarding the amount of risk, pain, and suffering that he will endure during his execution.

{¶ 30} The majority today summarily answers "no."

{¶ 31} I dissent.

{¶ 32} It is unthinkable that there could be no judicial forum in Ohio within which to explore the legal ambit of humane execution. Ohio has sentenced Scott to death, and Ohio has provided the means and guidelines under which he will die. Ohio must also take the responsibility of ensuring that the method of death does not violate Scott's remaining rights.

**{¶ 33}** The majority abdicates this court's responsibility to federal courts to hear and settle this matter. In doing so, we have shirked our duties to enforce and interpret an Ohio statute, Ohio's Constitution, and the United States Constitution. Worse, we have rendered unenforceable the General Assembly's statutory mandate that death shall be administered "quickly and painlessly," and we have foreclosed from consideration whether Ohio's Constitution provides greater protection from pain and suffering than the federal Constitution.

### Analysis

**{¶ 34}** Scott has the right to a quick and painless death.[1] R.C. 2949.22(A)[2] provides that the drug protocol "shall" be administered in such a manner as to "quickly and painlessly cause death."

---

1. {¶ a} In her concurring opinion, Justice O'Connor writes that while R.C. 2949.22(A) "imposes a *duty* upon the individual administering the lethal-injection protocol * * * it does not plainly create any *right* to a quick and painless death." (Emphasis sic.) ¶ 20 (O'Connor, J., concurring). I disagree. "A duty is the invariable correlative of that legal relation which is most properly called a right or claim." Hohfeld, Some Fundamental Legal Conceptions as Applied in Judicial Reasoning (1913), 23 Yale L.J. 16, 33. Black's Law Dictionary defines duty as "[a] legal obligation that is owed or due to another and that needs to be satisfied; *an obligation for which somebody else has a corresponding right*." (Emphasis added.) Black's Law Dictionary (9th Ed.2009) 580. See also *Marion Cty. Bar Assn. Commt. v. Marion Cty.* (1954), 162 Ohio St. 345, 354, 55 O.O. 205, 123 N.E.2d 521, quoting *Province of Tarlac v. Gale*, 26 Philippine 338, 351 (" 'Wherever there is a duty there is a corresponding right; and whenever a duty is laid upon an official there is another official or person who has the right to enforce the performance of the duty' ").

{¶ b} I agree that there are legitimate concerns as to the appropriate time that a challenge to the lethal-injection protocol might be ripe for adjudication. I do not find that issue relevant to the question asked of us by the federal court. The federal court did not ask us *when* a challenge based on R.C. 2949.22 to Ohio's lethal-injection protocol is ripe for adjudication in an Ohio court, but rather *whether* such a challenge may be made in an Ohio court. In my view, the issue before us concerns the manner, forum, and procedures in which Ohio's lethal-injection protocol may be challenged in an Ohio court as being inconsistent with the mandate enacted by the General Assembly. I cannot assent to the majority's determination that no forum or procedures exist in which an Ohio court may interpret the statutory "quick and painless" language included by the General Assembly in R.C. 2949.22, nor can I agree that this issue of interpretation should be left to the federal courts.

2. {¶ a} R.C. 2949.22 provides:

{¶ b} "(A) Except as provided in division (C) of this section, a death sentence shall be executed by causing the application *to the person, upon whom the sentence was imposed*, of a lethal

**{¶ 35}** This statutory right provides greater protection against pain and suffering than the Eighth Amendment against cruel and unusual punishment. The United States Supreme Court has explained that "[s]imply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual" under the Eighth Amendment. *Baze v. Rees* (2008), 553 U.S. 35, 50, 128 S.Ct. 1520, 170 L.Ed.2d 420, quoting *Farmer v. Brennan* (1994), 511 U.S. 825, 846, 114 S.Ct. 1970, 128 L.Ed.2d 811. In order for a petitioner to succeed on an Eighth Amendment challenge, he must show that an "alternative procedure [is] feasible, readily implemented, and [will] in fact significantly reduce a substantial risk of severe pain." *Baze* at 52. Thus, the burden on a petitioner to establish an Eighth Amendment violation is worlds apart from establishing a violation of the affirmative requirement in R.C. 2949.22(A) that the warden shall ensure that an execution be quick and painless.

**{¶ 36}** Accordingly, Ohio courts are obligated to enforce the policy announced in this statute and determine whether the lethal-injection protocol meets the criteria of R.C. 2949.22, independent of constitutional considerations. Through R.C. 2949.22, the General Assembly has provided that those condemned to death should experience a quick and painless death. Ohio courts are duty-bound to ensure that that policy is realized.

**{¶ 37}** Yet today's holding closes the courthouse doors to death-row petitioners who wish to protect their right to a quick and painless death under R.C. 2949.22.

---

injection of a drug or combination of drugs of sufficient dosage to *quickly and painlessly cause death*. The application of the drug or combination of drugs shall be continued until the person is dead. The warden of the correctional institution in which the sentence is to be executed or another person selected by the director of rehabilitation and correction shall ensure that the death sentence is executed." (Emphasis added.)

**{¶ 38}** Federal courts will not protect that right. The Sixth Circuit has recently ruled that federal courts cannot enforce R.C. 2949.22, because the statute does not "create[] a federal right protected by the Fourteenth Amendment." *Cooey v. Strickland* (C.A.6, 2010), 604 F.3d 939, 945.

**{¶ 39}** If Ohio's courthouses too are closed to claims under R.C. 2949.22—as the majority says they are—the statute is rendered meaningless and unenforceable, and the right, though laudable, becomes hollow.

**{¶ 40}** Further, Ohio courts must resolve whether those persons facing execution are entitled to greater protections under the Ohio Constitution than they are provided by the federal Constitution. In *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, we held that Ohio's Constitution has force independent of the United States Constitution. We explained that our state Constitution is not limited to the protections offered by its federal counterpart, and Ohio could "accord[] greater civil liberties and protections to individuals and groups." Id. at paragraph one of the syllabus.

**{¶ 41}** We have never directly held that the standard for a method-of-execution challenge under the Eighth Amendment of the United States Constitution announced in *Baze v. Rees* is the same as that required under Section 9, Article I of the Ohio Constitution, which prohibits "cruel and unusual punishments."

**{¶ 42}** In a case that predates *Baze v. Rees*, we addressed a method-of-death challenge to lethal injection: "[Appellant] argues that the death penalty is unconstitutional under the federal and Ohio Constitutions because the methods used to carry out the sentence, electrocution or lethal injection, are cruel and unusual punishment. * * * [Appellant] fails to cite any case in which lethal injection has been found to be cruel or unusual punishment. This proposition of

law is overruled." *State v. Carter* (2000), 89 Ohio St. 3d 593, 608, 734 N.E.2d 345.[3]

**{¶ 43}** *Carter* predated the holding in *Baze v. Rees* regarding the method by which a defendant may challenge the method of death for purposes of the Eighth Amendment. Accordingly, we have never determined whether the standard under our Constitution is the same as the standard announced in *Baze*. In *State v. Trimble*, 122 Ohio St. 3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 279, we cited *Carter* in summarily overruling a challenge to the lethal-injection method. We also cited *Baze*, noting that *Baze* upheld Kentucky's lethal-injection protocol, which is "similar" to Ohio's. Id. However, we have never independently examined our protocol, nor have we expressly adopted the *Baze* analysis as the standard for Ohio's protections against cruel and unusual punishment.

**{¶ 44}** Thus, nothing in our precedent forecloses a death-row convict from raising a new constitutional argument of independent force under the Ohio Constitution. Because this issue of purely state law is a novel one, federal courts should abstain from ruling on whether the lethal-injection protocol meets the protections afforded by Ohio's Constitution. See *Minnesota v. Natl. Tea Co.* (1940), 309 U.S. 551, 557, 60 S.Ct. 676, 84 L.Ed. 920 ("It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions"); S.Ct.Prac.R. 18.1 (providing that a federal court may certify

---

3. I note that *Carter* has become the seminal opinion as to method-of-execution challenges. This is regrettable, because the sole reasoning in *Carter* was that the defendant had not cited any cases finding lethal injection to be cruel and unusual; therefore the method was permissible. Despite the lack of analysis in *Carter*, we have cited its holding, time and time again, to summarily rebuff constitutional challenges to the method of lethal injection. See, e.g., *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 131; *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 245; *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, at ¶ 279; *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, at ¶ 126.

questions of state law "for which there is no controlling precedent in the decisions of this Supreme Court").

{¶ 45} Thus, by refusing to offer an Ohio forum for method-of-execution challenges, the majority has abandoned the core mission of Ohio courts of determining the scope and protections afforded by Ohio's Constitution. Worse, the result is that a death-row petitioner has no forum in which to seek protection from cruel and unusual punishment under the Ohio Constitution.

{¶ 46} Ohio courts should consider a convict's rights under the Eighth Amendment to the United States Constitution as well. In the context of death, a petitioner should be permitted to challenge methods of execution that carry an " 'objectively intolerable risk of harm' " or a " 'substantial risk of serious harm.' " *Baze*, 553 U.S. at 52, 128 S.Ct. 1520, 170 L.Ed.2d 420, quoting *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970, 128 L.Ed.2d 811. It is, by now, well settled that Ohio courts are arbiters of questions raised under the United States Constitution and enjoy the inherent power to apply its provisions. Thus, when the issue is presented to them, Ohio courts should not shy away from the duty to hear and determine a condemned person's Eighth Amendment challenge to lethal injection.

{¶ 47} Given the litany of laws governing the execution of human beings, it is unsurprising that there are, in fact, avenues in Ohio in which to raise such claims. Indeed, in this case, the federal court was faced with so many different options – venues that *had already been used or recommended* in Ohio, that it asked us to straighten them all out.

{¶ 48} As the federal court noted, challenges to the method of execution have been raised in different settings and at different stages and have met different fates. See, e.g., *State v. Scott*, 5th Dist. No. 2005CA00028, 2006-Ohio-257, ¶ 59-60 (issue first raised in court of appeals in postconviction-relief proceeding; rejected as waived); *State v. Jackson*, 11th Dist. No. 2004-T-0089, 2006 Ohio 2651, ¶ 149 (issue raised and rejected in trial court in postconviction;

appellate court held that "a postconviction proceeding is not the proper legal context in which to litigate this issue; instead, this type of issue should be raised in a declaratory judgment or habeas corpus action"); *State v. Rivera*, 9th Dist. Nos. 08CA009426 and 08CA009427, 2009-Ohio-1428 (pretrial motion for dismissal of death-penalty specifications on ground that method of execution is unconstitutional granted by trial court; appeal by state dismissed as not involving final, appealable order); *Otte v. Strickland*, Franklin C.P. No. 08-CV-013337 (16 death-row inmates seek declaratory judgment in common pleas court; case is currently stayed).

{¶ 49} In my opinion, there are at least two good methods by which a death-row petitioner may challenge the method of execution in Ohio courts.

{¶ 50} First is declaratory judgment under R.C. Chapter 2721. A declaratory-judgment action would allow petitioners to raise all potential constitutional and statutory issues in one action. And it would provide a framework for the issuance of injunctive relief should an Ohio court determine that the lethal-injection procedure falls short of the requirements of law. A declaratory-judgment action permits evidentiary discovery and hearings, which would create a thorough record of facts regarding the pain and suffering involved in various methods of execution. And it is a vehicle that is already in use to adjudicate method-of-execution claims. In Ohio, there is the case of *Otte v. Strickland*, Franklin C.P. No. 08-CV-013337. *Baze v. Rees* was a declaratory-judgment action originating in Kentucky. Id., 553 U.S. at 46, 128 S.Ct. 1520, 170 L.Ed.2d 420. Many other states have approved, suggested, or used declaratory-judgment actions as a vehicle to litigate constitutional and statutory challenges to methods of execution. See *Brown v. Vail* (2010), 169 Wash.2d 318, 237 P.3d 263; *Ark. Dept. of Corr. v. Williams* (2009), 2009 Ark. 523, ___ S.W.3d ___; *Ex parte Alba* (Tex.Crim.App.2008), 256 S.W.3d 682, 686; *Smith v. State* (Jan. 4, 2010), Mont.Dist. No. BDV-2008-303.

16

**{¶ 51}** Under the Ohio Declaratory Judgment Act, "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.C. 2721.02(A). The Act "provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 8. The declaratory-judgment statutes are "remedial and shall be liberally construed and administered." R.C. 2721.13.

**{¶ 52}** A declaratory-judgment action would allow the creation of a record on which a court may base its ruling. "An action for a declaratory judgment pursuant to R.C. Chapter 2721 is a civil action," *Sterling Drug, Inc. v. Wickham* (1980), 63 Ohio St.2d 16, 21, 17 O.O.3d 10, 406 N.E.2d 1363, and issues of fact "may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action or proceeding is pending." R.C. 2721.10. See also Civ.R. 57 ("The procedure for obtaining a declaratory judgment * * * shall be in accordance with these rules"). In *Baze v. Rees*, the Supreme Court noted that the trial court hearing on Kentucky's lethal-injection protocol involved "a 7-day bench trial during which the trial court received the testimony of approximately 20 witnesses, including numerous experts." Id., 553 U.S. at 46, 128 S.Ct. 1520, 170 L.Ed.2d 420.

**{¶ 53}** For those reasons, I believe that a declaratory-judgment action is the proper avenue in Ohio for litigating Scott's claims.

**{¶ 54}** Second, absent a declaratory-judgment action, a writ of mandamus may be available. A writ of mandamus would ensure that the warden fulfills his duty to carry out the death penalty quickly and painlessly under R.C. 2949.22.

**{¶ 55}** In order to gain entitlement to the writ, the petitioner "must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of respondents to provide it, and the lack of an adequate remedy in the ordinary course of law." *State ex rel. Gaylor, Inc. v. Goodenow*, 125 Ohio St.3d

407, 2010-Ohio-1844, 928 N.E.2d 728, ¶ 15. A petitioner should be granted a forum in which to argue that all of those factors are met. R.C. 2949.22(A) provides that the drug protocol "shall" "quickly and painlessly cause death" and that the warden "shall ensure that the death sentence is executed." Thus, the statute seems to place an affirmative legal duty upon the warden and to confer a right on the inmate to a quick and painless death. If a declaratory-judgment action is not available, mandamus could be appropriate, because petitioners would have no remedy available at law.

### Conclusion

{¶ 56} My opinion today does not address the merit, or lack thereof, of Scott's substantive arguments concerning lethal injection as a means of carrying out his death sentence. But I would hold that a failure to provide a forum in which Scott's rights may be contested results in Scott being summarily deprived of those rights.

{¶ 57} For the foregoing reasons I would hold that Scott may challenge his method of execution in a declaratory-judgment action. Accordingly, I dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 58} It is correct, in response to the direct question we have been asked to answer, to state that Ohio does not have an established legal process for a capital defendant to challenge the precise method and drug protocol that will be used by the state to execute that defendant. We are, however, bound by Section 9, Article I of the Ohio Constitution to ensure that cruel and unusual punishment is not inflicted. As a society, our comprehension of the meaning of those words has evolved. The understanding of the state officials responsible for carrying out the mandate of death has been, and continues to be, re-examined with respect to the exact drugs, procedures, and personnel needed to comply with statutory and constitutional mandates.

{¶ 59} It is not our duty to lay out a roadmap for protracted challenges to Ohio's execution protocol by every capital defendant. Section 2, Article IV of the Ohio Constitution, however, grants jurisdiction to this court over the five great writs, Section 2(B)(1)(a) through (e), and "[i]n any cause on review as may be necessary to its complete determination." Section 2(B)(1)(f). I would deem Article IV to provide an avenue for a capital defendant to challenge an execution protocol. Is that a satisfactory remedy? That is the question we return to the federal courts.

_____

David L. Doughten and Jeffrey J. Helmick, for petitioner.

_____